**Jerry CALLAGHAN, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 3, 2000.

Decided April 20, 2000.

---

409

Norman Weinstein, Philadelphia, for petitioner.

Darren L. Harrison, Philadelphia, for respondent.

Before COLINS, J., McGINLEY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Jerry Callaghan (Claimant) petitions for review from the September 10, 1999 order of the Workers' Compensation Appeal Board (Board) that affirmed in part and reversed in part the May 5, 1998 order of the Workers' Compensation Judge (WCJ) denying Claimant benefits under the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

Based upon the testimony received into evidence, the WCJ made the following findings of fact.

1. Claimant filed a Petition for Workers' Compensation Benefits on July 15, 1995 alleging that he sustained an injury to his left leg while employed with the City of Philadelphia on or about January 17, 1995.

2. On August 11, 1995, the Employer filed an Answer denying the allegations of Claimant's Petitions.

3. The matter was assigned by Bureau Notice dated August 4, 1995 to the undersigned who held a series of hearings.

4. The evidentiary record consists of Claimant's testimony on December 20, 1995 and Claimant['s] deposition taken on December 15, 1997. Claimant also presented the deposition of Corey K. Ruth, M.D. on January 22, 1996.

5. The Employer presented the testimony of James Kates taken on January 13, 1997 and a Decision of [the] Civil Service Commission dated May 2, 1996 in which Claimant's termination for cause, effective July 30, 1995 was affirmed.

6. The Judge has carefully considered the medical evidence in the case consisting of the testimony of Dr. Corey K. Ruth and concludes that it is un-rebutted that the Claimant sustained an injury to his left leg as a result of incidents which occurred on January 17, 1995.

7. This finding notwithstanding, the determinative issue in the case is whether Claimant was terminated for cause and whether the Civil Service Commission Determination noted above is the law of the case.

8. The Civil Service Commission of the City of Philadelphia rendered a Decision on May 2, 1996 denying Claimant's appeal from his dismissal effective July 30, 1995.

9. This Judge has considered the Determination of the Civil Service Commission and finds it to be credible, competent and worthy of belief.

10. The Decision of the Civil Service Commission is hereby adopted as fact. Specifically, the following Civil Service Commission determination, as noted in

---

1. Act of June 12, 1915, P.L. 736, *as amended,*   77 P.S. §§ 1–1041.4.

its opinion of March [sic, May] 2, 1996 are [sic] adopted as follows:

(a) Claimant was dismissed from employment effective July 30, 1995 as the Claimant violated Civil Service Regulations by making false statements on his employment application. Specifically, Claimant lied about his high school education, college education, prior job experience and prior employment history;

. . .

(c) The Civil [Service] Commission concluded that "this case turns on the issue of credibility and [it] is the prerogative of the Commission to determine the credibility of witnesses and the value of their testimony . . in this case, we find [Claimant] to be unworthy of belief when he asserted that he did not intentionally falsify the application. [Claimant] is an articulate, intelligent individual who plain[ly] knew that his academic credential[s] were insufficient and was hoping that they would not be checked. He admitted as much in his own testimony since he knew a college degree was a job prerequisite. There is no hard evidence to corroborate [Claimant's] bold assertion that management promised him a job or that he had detrimentally relief upon such a life's promise. Accordingly, this appeal is denied."

11. Claimant presented no evidence that he appealed from the Civil Service Commission Determination, thereby making it final and the law of the case.

12. This Judge has carefully reviewed the Claimant's two testimonies and the testimony of James Kates with reference to the issue of Claimant's disability and also with reference to the issue of the terms surrounding Claimant's termination and the Civil Service Commission hearings.

13. With reference to the testimony of the Claimant and Mr. Kates regarding Claimant's termination, the Civil Service Commission Decision is dispositive and acts to collaterally estop the Claimant from raising the issues as to its credibility.

14. With reference to Claimant's testimony regarding his disability it is found to be moot based on the above finding that Claimant was terminated for cause.

(Findings of Fact Nos. 1–14) [2]

Based upon these findings, the WCJ denied Claimant's claim petition. Claimant appealed to the Board, which affirmed in part and reversed in part the WCJ's determination.

Upon review, the Board concluded that since the WCJ found that Claimant had sustained a work-related injury, he erred in failing to award Claimant payment of medical bills and litigation costs. Thus, the Board reversed that portion of the WCJ's order denying Claimant medical expenses and costs of litigation.

The Board further concluded, however, that the WCJ did not err in applying the principles of collateral estoppel to Claimant's petition. The Board noted that the WCJ was free to place significant weight on the Civil Service Commission's determination and therefore, was free to accept the credibility determinations therein. The Board thus determined that the doctrine of collateral estoppel precluded Claimant from receiving wage-loss benefits and accordingly, suspended Claimant's benefits as of January 17, 1995.

■ In this appeal, we are asked to determine whether the Board erred in affirming the WCJ's determination (1) that Claimant was collaterally estopped from challenging the disability portion of his claim petition and (2), that Claimant was terminated for willful misconduct and, thus, was precluded from receiving work-

2. The Civil Service Commission's May 2, 1996 determination was made part of the record before the WCJ and is marked Exhibit D–2.

ers' compensation benefits. On appeal, we are limited to determining whether constitutional rights were violated, an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. *City of Philadelphia v. Workers' Compensation Appeal Board (Candito)*, 734 A.2d 73 (Pa.Cmwlth.), *appeal denied,* —— Pa. ——, 747 A.2d 902 (1999).

Collateral estoppel will apply only: (1) when the issue in the prior adjudication was identical to the one presented in the later action; (2) when there was a final judgment on the merits; (3) when the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; (4) when the party against whom it is asserted has had a full and fair opportunity to litigate the issue in a prior action; and (5) when the determination in the prior proceeding was essential to the judgment. *Logue v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 660 A.2d 175 (Pa.Cmwlth.1995). "In addition, for collateral estoppel to apply *between administrative agencies,* there must be a showing that the policies and goals underlying the matter at issue are the same in both proceedings." *Id.* at 176 (emphasis in the original).

The Act enables an employer to minimize tort liability for work-related injuries, i.e. employers surrender their defenses to civil actions and, in exchange, employees forego any actions in tort. *Bortz v. Workmen's Compensation Appeal Board (Reznor Div. of FL Indus.)*, 656 A.2d 554 (Pa.Cmwlth.1995), *aff'd* 546 Pa. 77, 683 A.2d 259 (1996). Also, its purpose is to provide for compensation to those individuals who suffer a loss of earning through no fault of their own. A claimant may, however, be denied workers' compensation benefits where his loss of earnings is due to some action or activity for which the *claimant* was at fault. *Id.* In other words, a claimant working under a suspension of benefits who has been terminated for willful misconduct may be denied workers' compensation benefits where it is sufficiently demonstrated that the claimant's loss of earnings is not due to his work-related disability but rather to his own willful misconduct. *Southeastern Pennsylvania Transp. Auth. v. Workmen's Compensation Appeal Board (Pointer)*, 145 Pa. Cmwlth. 539, 604 A.2d 315 (1992).[3]

The Civil Service Act[4] is primarily concerned with the administration of government in the Commonwealth. *See* Section 2 of the Civil Service Act, 71 P.S. § 741.2; *Morrison v. Department of Corrections*, 659 A.2d 620 (Pa.Cmwlth.1995). One of the duties of the Civil Service Commission is to conduct hearings when a regular civil service employee is permanently separated from employment in order to determine whether there was just cause for termination. *See* Sections 203 and 951(a) of the Civil Service Act, 71 P.S. § 741.203 and 741.951(a). Just cause for removal from civil service employment exists only if the factors supporting removal are job-related and in some manner rationally and logically touch upon the employee's competency and ability to perform. *Morrison.*

Section 103.21 of the Civil Service regulations provide that

---

3. Although not defined by the Act, willful misconduct has been defined as

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Bortz v. Workmen's Compensation Appeal Board (Reznor Div. of FL Indus.)*, 546 Pa. 77, 78 n. 1, 683 A.2d 259, 260 n. 1 (1996)(quoting *Rossi v. Unemployment Compensation Board of Review*, 544 Pa. 261, 267, 676 A.2d 194, 197 (1996)) (quoting *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 620, 383 A.2d 533, 535 (1978)).

4. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005.

[w]henever the Commission, shall, after due inquiry, determine that an employe has been appointed or promoted as a result of having furnished false information or concealed material information about himself, or others, the Director shall give written notice of the determination to the appropriate appointing authority. The notice shall contain reference to section 906 of the act (71 P.S. § 741.906) and shall include instructions as to the remedial actions to be taken by the appointing authority.

4 Pa.Code § 103.21.[5] Thus, under its regulations and the Civil Service Act, the Civil Service Commission must take action against an employee who falsifies information regarding his educational background, as is the case here.

In comparing the two acts, we note that although the policies and goals are not similarly stated, both acts provide a mechanism designed to prevent an employee from being rewarded for his own actions where they are adverse to the employer's interests. Presently, the issue before the Civil Service Commission was whether Claimant's resume and re-employment applications contained knowingly false information in violation of the Civil Service regulations. The issue before the WCJ was whether, after establishing a work-related injury, Claimant's present loss of earnings was due to his disability or to his own actions.

In each proceeding, Employer bore the burden of showing that Claimant's termination was due to his own actions that were adverse to Employer's interest. Thus, we conclude that the underlying policies and goals are sufficiently similar so as to apply the principles of collateral estoppel.

Presently, the criteria for the application of collateral estoppel have been met: the issues between the two proceedings are identical, the parties to the action are the same, there was a final adjudication on the merits of the claim, Claimant had a full and fair opportunity to defend the action and the prior determination was essential to the judgment. Therefore, we conclude that the Board and the WCJ did not err in determining that the doctrine of collateral estoppel applied to the case *sub judice.*

In his second argument on appeal, Claimant maintains that the Board erred in affirming the WCJ's determination that Claimant's termination has an effect on his entitlement to benefits for an injury that occurred in 1995. Specifically, Claimant argues that the misrepresentations on his employment application in 1992 should not bar workers' compensation benefits for an injury occurring in 1995 since case law provides that compensation may only be denied for willful misconduct where it is shown that the willful misconduct occurred after the work-related injury. In *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 168 Pa. Cmwlth. 78, 650 A.2d 114 (1994), we held that where a claimant is discharged because of misconduct that occurred prior to his injury, the claimant's loss of earnings is deemed to have resulted from disability due to injury. We further concluded, however, that if a claimant commits misconduct after the injury and is properly discharged for that conduct, then he is precluded from receiving compensation for loss of earnings from the date of his termination.

A careful review of the May 2, 1996 Civil Service Commission determination reveals that the Commission looked to both the falsification of Claimant's original application for employment, which was prior to his work injury, and the falsification of Claimant's re-employment application in mid–1995, which occurred after Claimant's January 1995 injury. When Claimant submitted his 1992 resume as part of his re-

**5.** Section 906 of the Civil Service Act, 71 P.S. § 741.906, provides that any employee holding a position in the classified service who intentionally violates any provisions of the act or rules made thereunder shall be immediately separated from service.

employment application in 1995, he essentially attempted to reaffirm the prior falsifications, giving rise to the post-injury willful misconduct.

Accordingly, we affirm.

## O R D E R

AND NOW, this 20th day of April, 2000, it is hereby ordered that the September 10, 1999 order of the Workers' Compensation Appeal Board is affirmed.