David COHEN, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (CITY OF PHIL-
ADELPHIA), Respondent,

City of Philadelphia, Petitioner,

v.

Workers' Compensation Appeal Board
(Cohen), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Feb. 11, 2005.

Decided March 15, 2005.

W. Michael Mulvey, Philadelphia, for petitioner.

Joseph P. Turchi, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

David Cohen (Claimant) and the City of Philadelphia (Employer) cross-appeal from an order of the Workers' Compensation Appeal Board (Board), affirming in part and reversing in part the decision of the

Workers' Compensation Judge (WCJ). The Board affirmed the order of the WCJ insofar as it denied Employer's petition to terminate Claimant's compensation benefits, denied a penalty petition filed by Claimant and granted a petition for review of utilization review determination filed on behalf of one of Claimant's treating physicians, Dr. Amelia Tabuena. The Board reversed the order of the WCJ insofar as it granted Claimant's petition to reinstate compensation benefits. We now affirm.

Claimant was employed as a police officer for the city of Philadelphia (the City). In the course and scope of his employment on February 5, 2000, Claimant sustained injuries to his head, low back, groin, flank, chest and arm after being struck by a motor vehicle while attempting to subdue a suspected drug dealer. More specifically, while on patrol on this date, Claimant and his partner approached the corner of 62nd and Vine Streets in the City and attempted to arrest five males who were dealing narcotics.

Following a brief foot pursuit, Claimant apprehended one of the males. However, as he was placing this individual under arrest, he was struck from behind by a minivan. Claimant received emergency medical treatment at a local hospital, where he was kept overnight. Employer recognized the injuries sustained by Claimant in the form of a notice of compensation payable issued by Employer on May 4, 2000. This notice described Claimant's injuries as "CLOSED TRAUMA, STRAIN, CONTUSIO [sic]." (R.R. at 1a). Claimant thereafter received wages in lieu of compensation benefits pursuant to Philadelphia Civil Service Regulation 32.09.[1]

Claimant eventually came under the care of physicians at a workers' compensation clinic at MCP Hospital. Claimant became dissatisfied with his treatment at this clinic and thereafter sought treatment from Dr. Berhan Ghermay at the Elkins Park workers' compensation clinic. Dr. Ghermay continued to treat Claimant over the next several months. During this time period, Claimant was placed in injured on duty status and received his full salary. On May 29, 2000, Claimant was returned to a limited duty status at the direction of Dr. Ghermay.

Employer thereafter issued a notification of suspension dated May 31, 2000, indicating that Claimant had returned to work without a loss of wages. Thereafter, Claimant underwent an independent medical evaluation with Dr. Andrew Newman, an orthopedic surgeon, in July of 2000, as well as a neurologic evaluation with Dr. I. Howard Levin in September of 2000. Following these evaluations, on October 20, 2000, Dr. Ghermay directed Claimant to return to full duty status.

Claimant then filed an appeal with the Civil Service Commission of the City of Philadelphia (the Commission) pursuant to Philadelphia Civil Service Regulation 32.11.[2] This appeal was filed on Novem-

---

1. Regulation 32.09(a) essentially provides that if an employee becomes entitled to workers' compensation benefits under the Act, "the benefits to which the employee is entitled under the terms of this Regulation ... shall, to the extent and in the amount of Workers' Compensation benefits payable for that week, be considered a payment of wages in lieu of compensation...."

2. Regulation 32.11 provides as follows:

A Regulation 32 employee who is instructed by the Municipal Employees Compensation clinic to return to work, either on a full-active or limited duty basis, and does not do so, is being insubordinate, even if he feels he is physically unable to return to work. In such a situation, however, he may appeal to the Civil Service Commission. Should the employee file an appeal within thirty (30) days of such refusal to return to work, his absence from work for the period be-

ber 13, 2000. The Commission conducted several hearings between February and July of 2001. Ultimately, the Commission denied Claimant's appeal.[3] Claimant then filed an appeal with the Court of Common Pleas of Philadelphia County (trial court), alleging that the Commission's decision was not supported by substantial medical evidence of record.

Nevertheless, the trial court denied the appeal and affirmed the Commission's decision, finding that the same was supported by substantial evidence. More specifically, the trial court indicated that Claimant's release to full duty was based upon medical testimony received by the Commission indicating that Claimant had fully recovered from his work injuries. Claimant thereafter filed an appeal with this Court. By opinion and order dated March 27, 2003, we affirmed the order of the trial court.

Meanwhile, Claimant returned to full duty status on November 9, 2000. However, Claimant only worked for a couple of hours before he ceased working because of what Claimant described as pain shooting up his back and pain in his ankle. Claimant attributed these pains to having to wear the required boots, vest, rig and weapon. Claimant immediately sought medical treatment. On November 28, 2000, Claimant filed a petition to reinstate his workers' compensation benefits, alleging a worsening of his condition. In March of 2001, Claimant filed a penalty petition alleging that Employer had violated the terms of the Pennsylvania Workers' Compensation Act (Act)[4] by refusing to reinstate his benefits. Employer filed answers denying the allegations of these petitions.

In June of 2001, Employer filed a termination petition, alleging that Claimant had fully recovered from any and all work-related injuries. Claimant filed an answer to this petition denying that he was fully recovered. To the contrary, Claimant averred that he continued to have residual disability associated with his February 5, 2000, work injury. One year later, in June of 2002, Employer filed a utilization review request with respect to the office visits, medical treatment, referrals and prescriptions provided to Claimant by Dr. Tabuena on April 25, 2002, and continuing into the future.[5] After a utilization review organization determined that the treatment and medications provided to Claimant by Dr. Tabuena after April 25, 2002, was neither reasonable nor necessary, Dr. Tabuena filed a petition for review of utilization review determination.

---

tween the date of filing such appeal and the date a decision thereon is entered by the Commission shall be charged against accrued sick time. In the event that accrued sick and vacation leave and compensatory time are utilized and exhausted during the period prior to the Commission's decision, he shall thereafter be carried without pay. A Commission decision adverse to the employee will entitle the City to recover wages paid by the City for sick leave so used retroactive to the date of the appeal.

3. The burden was on Employer before the Commission. We have previously held that "where an employer seeks to terminate benefits after placing an employee on [injured on duty] status, the burden is on the employer to prove that the employee is no longer disabled or that the employee's current disability is not related to his previous work-related injury." *Sweed v. City of Philadelphia*, 687 A.2d 59, 62 (Pa.Cmwlth.1996), *petitions for allowance of appeal denied*, 559 Pa. 699, 739 A.2d 1061 (1999) and 578 Pa. 713, 853 A.2d 364 (2004).

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

5. Claimant had been referred to Dr. Tabuena by one of his treating physicians for purposes of a consultation regarding physical medicine and rehabilitation.

All of these petitions were consolidated for purposes of hearing and disposition by the WCJ. At the hearings, Claimant testified on his own behalf in support of his reinstatement petition. Claimant reiterated a history of his February 5, 2000, work injury and his ongoing complaints of pain. Claimant acknowledged that he returned to limited duty on May 29, 2000, and that he attempted to return to full duty on November 9, 2000. However, Claimant indicated that he was only able to work for a couple of hours because of pain in his back and ankle. Claimant noted his belief that his uniform, including his boots, vest, rig and weapon, were too much for his back and ankle. Claimant sought treatment from Dr. Ghermay the next day, but, after an evaluation, Dr. Ghermay still recommended that Claimant maintain full duty status.

Claimant thereafter sought medical treatment from Dr. Thomas Corcoran, a Board-certified orthopedic surgeon who had been treating Claimant since June of 2000, for his work injuries. Dr. Corcoran performed an evaluation of Claimant on November 28, 2000, after which he advised Claimant to continue with therapy and to start pain management.[6] Dr. Corcoran also scheduled Claimant for an MRI, which revealed some degeneration of the acromial clavicular joint. Dr. Corcoran referred Claimant to Dr. Joseph Robinson for purposes of chiropractic and acupuncture treatment. Claimant indicated that the latter treatment did alleviate some of his upper back pain. Nevertheless, Claimant indicated that he continues to experience pain in his left shoulder, back, right knee and left ankle.[7]

In further support of his reinstatement petition, Claimant presented the deposition testimony of Dr. Corcoran.[8] Dr. Corcoran noted Claimant's 1999 work injury and his subsequent left ankle surgery. With respect to this injury, Dr. Corcoran cleared Claimant to return to full duty on January 11, 2000. With respect to the 2000 work injury, Dr. Corcoran initially diagnosed Claimant as suffering from a lumbar sprain and a herniated disc at the L5–S1 level. He subsequently reviewed an EMG and nerve conduction study which revealed left lumbar radiculopathy. Following an evaluation on August 17, 2000, Dr. Corcoran indicated that Claimant's symptoms had remained unchanged since his initial examination.

Dr. Corcoran next saw Claimant on November 28, 2000. During this examination, Dr. Corcoran noted tenderness over Claimant's left ankle joint line, tenderness over his right infrapatellar tendon and tenderness in the lumbar spine. Dr. Corcoran opined that Claimant was unable to return to full duty status, but that he was capable of light duty status. Dr. Corcoran again saw Claimant in January, February and March of 2001. During these examinations, Claimant continued to complain of pain in his shoulder, back and ankle and Dr. Corcoran indicated that his physical examination remained unchanged. As of March 27, 2001, Dr. Corcoran opined that Claimant had permanent symptoms from the February 5, 2000, work-related acci-

6. As part of this pain management program, Claimant received epidural injections in his back.

7. Claimant had injured his left ankle in another work-related incident on February 5, 1999, exactly one year prior to the most recent incident at work. Dr. Corcoran also treated Claimant for this injury, which required surgery on his left ankle. In fact, Claimant had just returned to full duty approximately two weeks prior to the 2000 incident.

8. Dr. Corcoran had previously testified for Claimant before the Commission.

dent which rendered him unable to return to full duty status.

With respect to the utilization review petition, Claimant submitted the report of Dr. Tabuena. In this report, Dr. Tabuena noted that she served in this case as a specialist in physical medicine and rehabilitation, consulting and providing advice to Claimant and his treating physicians. Dr. Tabuena acknowledged in this report that she did not outline a treatment program for Claimant and that she only saw him from time to time, the last visit being November 19, 2002.

In opposition to these petitions and in support of its own termination petition, Employer presented the deposition testimony of Dr. Ghermay.[9] Dr. Ghermay first saw Claimant on February 25, 2000. He initially diagnosed Claimant as suffering from multiple contusions, secondary to trauma and recommended that he not return to his work as a police officer. Dr. Ghermay later referred Claimant for an orthopedic evaluation, after which Claimant underwent aquatic therapy, steroid treatments and anti-inflammatory medications. Dr. Ghermay noted that a later MRI revealed a disc herniation at L5–S1 and a later EMG revealed L5–S1 radiculopathy.

Nevertheless, Dr. Ghermay released Claimant to light duty status on May 29, 2000. Claimant continued to complain of pain in his shoulder, back and left ankle. As of October 20, 2000, Dr. Ghermay opined that Claimant had recovered from his injuries of February 5, 2000, and that he could return to full duty status. Dr. Ghermay indicated that he again saw Claimant on November 10, 2000, after his attempted return to full duty. Dr. Gher-

may noted that Claimant's complaints were identical to his complaints prior to his release to full duty. Dr. Ghermay still opined that Claimant had recovered.

Employer further presented the deposition testimony of Dr. Andrew Newman.[10] Dr. Newman is Board-certified in orthopedic surgery. Dr. Newman examined Claimant on July 28, 2000. At the time, he indicated that Claimant's primary complaint was low back pain, along with pain in his knees, rib, flank and short-term memory loss. As to Claimant's prior medical records, Dr. Newman indicated that the EMG reflecting left L5–S1 radiculopathy was inconsistent with the MRI which showed a disc herniation to the right and middle of L5–S1.

Dr. Newman described each of the fifteen or sixteen tests he performed with respect to Claimant's lumbar spine, all of which were essentially normal and/or failed to correlate with his subjective complaints. Overall, Dr. Newman indicated that, from an orthopedic standpoint, he failed to find any objective evidence of an ongoing orthopedic pathology. Thus, Dr. Newman opined that Claimant had fully recovered from an orthopedic standpoint and that he could return to work without restrictions. Dr. Newman thereafter signed an affidavit of full recovery in this regard on October 11, 2000.

In opposition to the petition for review of utilization review determination filed by Dr. Tabuena, Employer submitted the utilization review fact sheet and report. In this report, Dr. Marc Adelsheimer, who conducted the utilization review, noted that all treatment provided by Dr. Tabuena on April 25, 2002, was reasonable and necessary, as this treatment was within the

9. Dr. Ghermay had previously testified for Employer before the Commission.

10. Similar to Dr. Ghermay, Dr. Newman had previously testified for Employer before the Commission.

established treatment protocol for chronic cervical and lumbar strain. Dr. Adelsheimer also noted that Claimant would require additional treatment for his chronic conditions. However, Dr. Adelsheimer could not find any ongoing treatment as reasonable and necessary due to a lack of contact with Dr. Tabuena and a lack of a treatment plan outlined in the medical records.

Employer also later submitted a copy of the Commission's decision dated October 4, 2001, returning Claimant to full duty status. Employer noted that this decision had been affirmed by the trial court. On the basis of this decision, Employer alleged that Claimant's reinstatement petition was barred by the doctrine of collateral estoppel.

Ultimately, the WCJ issued a decision and order granting Claimant's reinstatement petition, denying Claimant's penalty petition, denying Employer's termination petition and granting Dr. Tabuena's petition for review of utilization review determination. In rendering her decision, the WCJ accepted the testimony of Claimant as credible. The WCJ also accepted the testimony of Dr. Corcoran as more credible and persuasive than the testimony of Drs. Ghermay and Newman. With respect to Claimant's reinstatement petition and the doctrine of collateral estoppel, the WCJ found that she was not bound by the Commission's decision and that Employer cannot circumvent the Act. The WCJ further found Dr. Tabuena's explanation regarding a lack of a treatment plan to be

credible and that her treatment of Claimant, including referrals and medications, was reasonable and necessary.

Employer thereafter filed an appeal with the Board. The Board affirmed the decision of the WCJ with respect to the denial of Employer's termination petition, the denial of Claimant's penalty petition and the granting of the petition for review of utilization review determination. The Board reversed the decision of the WCJ granting Claimant's reinstatement petition. In this regard, the Board concluded that the doctrine of collateral estoppel applied such that the Commission's prior determination finding Claimant capable of returning to active duty as police officer served to preclude a finding that Claimant has a loss in his earning power as a result of his work injuries. Both Claimant and Employer then filed petitions for review with this Court.

■ On appeal,[11] Employer first argues that the Board erred in affirming the decision of the WCJ denying its termination petition. We disagree.

■ In a termination proceeding, the employer bears the burden of proving that all of the claimant's work-related disability has ceased. *AT & T v. Workers' Compensation Appeal Board (Hernandez),* 707 A.2d 649 (Pa.Cmwlth.1998). An employer can meet this burden by presenting unequivocal, competent medical testimony that the claimant has fully recovered from a work-related injury or that an existing disability is not work-related. *Jordan v.*

11. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers'*

*Compensation Appeal Board (Marlowe),* 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer,* 571 Pa. at 203, 812 A.2d at 487.

*Workmen's Compensation Appeal Board (Consolidated Electrical Distributors)*, 550 Pa. 232, 704 A.2d 1063 (1997).

■ As always, the WCJ is the ultimate finder of fact and has exclusive province over questions of credibility and evidentiary weight. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board and Krawczynski*, 9 Pa. Cmwlth. 176, 305 A.2d 757 (1973). In making such determinations, the WCJ is at liberty to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Carr v. Workmen's Compensation Appeal Board (May Department Store)*, 671 A.2d 780 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 544 Pa. 662, 676 A.2d 1202 (1996).

In support of its burden in this case, Employer presented the testimony of Drs. Ghermay and Newman. Employer relies on the testimony of Drs. Ghermay and Newman in the course of this argument. However, Employer neglects the fact that the WCJ specifically rejected the testimony of Drs. Ghermay and Newman in favor of the credible testimony of Dr. Corcoran. Dr. Corcoran opined that Claimant continued to experience pain and other symptoms in the areas of his shoulder, ankle, neck and back, including L5–S1 radiculopathy, all of which were attributable to Claimant's prior work injuries. Further, Dr. Corcoran opined that Claimant had permanent symptoms related to his February 5, 2000, work incident. Thus, we cannot say that the Board erred in affirming the decision of the WCJ denying Employer's termination petition.

■ Next, Employer argues that the Board erred in affirming the decision of the WCJ granting the petition for review of utilization review determination filed on behalf of Dr. Tabuena. Again, we disagree.

Employer bases its argument in this regard on its prior argument that the Board erred in affirming the decision of the WCJ denying its termination petition. More specifically, Employer argues that because it met its burden on the termination petition, any continuing medical treatment was, by definition, unreasonable and unnecessary. However, we determined above that the Board did not err in affirming the decision of the WCJ denying Employer's termination petition.

Additionally, as the WCJ noted in her decision, Dr. Adelsheimer, the utilization reviewer, acknowledged that Claimant had chronic cervical and lumbar strain injuries which would require additional medical treatment in the future. Moreover, as to Dr. Adelsheimer's conclusion that ongoing medical treatment was neither reasonable nor necessary due to Dr. Tabuena's lack of a treatment plan, the WCJ accepted Dr. Tabuena's explanation regarding the lack of such plan as credible. Thus, we cannot say that the Board erred in affirming the decision of the WCJ granting the petition for review of utilization review determination filed on behalf of Dr. Tabuena.

■ We now shift to Claimant's argument on appeal. Claimant argues that the Board erred as a matter of law in reversing the decision of the WCJ granting his reinstatement petition on the basis of the doctrine of collateral estoppel. We disagree.

■ We have previously described the doctrine of issue preclusion, or "collateral estoppel" as it is sometimes referred, as acting "to foreclose litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment." *Maranc v. Workers' Compensation Appeal Board (Bienenfeld)*, 751 A.2d 1196, 1199 (Pa.Cmwlth.2000). Collateral estoppel will only apply when:

(1) the issue decided in the earlier case is identical to the one presented in the later action; (2) there was a final judgment on the merits in the earlier action; (3) the party against whom the plea is asserted was a party, or in privity with a party to the earlier adjudication; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action; and (5) the determination in the prior proceeding was essential to the judgment. *See Callaghan v. Workers' Compensation Appeal Board (City of Philadelphia),* 750 A.2d 408 (Pa. Cmwlth.2000).

■ "In addition, for collateral estoppel to apply between administrative agencies, there must be a showing that the policies and goals underlying the matter at issue are the same in both proceedings." *Logue v. Workmen's Compensation Appeal Board (City of Philadelphia),* 660 A.2d 175, 176 (Pa.Cmwlth.1995). In this regard, we have previously held that Philadelphia Civil Service Regulation 32 is similar in intent and form to the Act and that the principles enunciated in interpreting the Act will apply to Philadelphia Civil Service Regulation 32 where similar substantive issues are involved. *See Campbell v. Civil Service Commission of the City of Philadelphia,* 717 A.2d 574 (Pa.Cmwlth.1998); *Sammons v. Civil Service Commission of the City of Philadelphia,* 673 A.2d 998 (Pa.Cmwlth.1996), *affirmed,* 555 Pa. 1, 722 A.2d 1012 (1998).

Under Philadelphia Civil Service Regulation 32, where an employer seeks to terminate benefits after placing an employee on injured on duty status, the burden is on the employer to prove that the employee is no longer disabled or that the employee's current disability is not the result of his work-related injury. *Campbell v. Civil Service Commission of the City of Philadelphia,* 717 A.2d 574 (Pa.Cmwlth.1998); *Sweed.* In such cases, the employer is seeking to return an employee to his/her pre-injury job.

■ On the other hand, under the Act, a claimant seeking to reinstate benefits following a suspension has the burden to establish that 1) through no fault of his own, his disability, i.e., earning power, is again adversely affected by the work-related injury; and 2) that the disability which gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments,* 526 Pa. 25, 584 A.2d 301 (1990). In other words, a claimant in this situation is attempting to establish that his work-related injuries are preventing him from working, i.e., his work injuries are adversely affecting his earning power. Thus, under both Philadelphia Civil Service Regulation 32 and Act, the focus in these types of cases is whether a claimant's work-related injuries results in an inability to work and a subsequent loss of his/her earning power.

In this specific case, the parties relied on the same medical experts before the WCJ and the Commission. Employer's medical expert, Dr. Ghermay, cleared Claimant to return to full duty status as of October 20, 2000. Dr. Ghermay later testified before the Commission and the WCJ that Claimant had recovered from his injuries of February 5, 2000, such that he could return to full duty status. Dr. Newman, Employer's other medical expert, concurred with Dr. Ghermay that Claimant could return to his pre-injury job without restrictions as of October of 2000. The Commission relied on the testimony of Drs. Ghermay and Newman in concluding that Claimant was no longer disabled and capable of returning to full duty status. This conclusion was later affirmed by both the trial court and this Court.

With his reinstatement petition, Claimant was seeking a contrary determination for this same period of time, i.e., a determination that he remained disabled and incapable of performing his pre-injury job

as a result of his work-related injuries. As this same issue had been previously decided by the Commission, later affirmed by both the trial court and this Court, and based upon the fact that all of the other elements necessary to the application of the doctrine of collateral estoppel have been met, we cannot say that the Board erred as a matter of law in utilizing this doctrine to reverse the decision of the WCJ.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 15th day of March, 2005, the order of the Workers' Compensation Appeal Board is hereby affirmed.