# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greater Hazleton Health Alliance,    :
                 Petitioner    :
                                :
           v.                :    No. 1309 C.D. 2018
                                :    Submitted: January 18, 2019
Workers' Compensation Appeal    :
Board (Zito),                     :
                 Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                   FILED: June 6, 2019

Greater Hazleton Health Alliance (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of Workers' Compensation Judge (WCJ) Brian Hemak (WCJ Hemak) that, in relevant part, granted the Penalty Petition filed by Marie Zito (Claimant). Pertinently, WCJ Hemak found that Employer violated the Workers' Compensation Act[1] (Act) by not paying for medications prescribed by Shailen Jalali, M.D., and filled by Alliance Medication Services (Alliance), that were causally related to Claimant's work injury. WCJ Hemak directed Employer to pay for those medications and imposed a 50-percent penalty. On appeal, Employer argues the Board erred in affirming WCJ Hemak's decision, which was based on WCJ Hemak

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2710.

crediting Dr. Jalali's testimony, where Dr. Jalali's treatment and diagnoses had been previously rejected by WCJ Susan Caravaggio (WCJ Caravaggio), the Board, and this Court in *Zito v. Workers' Compensation Appeal Board (Northeastern Pennsylvania Health Alliance)* (Pa. Cmwlth., No. 138 C.D. 2017, filed September 14, 2017) (*Zito I*). After review, we affirm the Board's Order.

## I. Background

### A. *Claimant's Injury and Treatment Generally*

On October 7, 2010, Claimant, a registered nurse, sustained a work-related injury to her right hand, which was accepted by Employer in a notice of compensation payable (NCP). Claimant received temporary total disability benefits for a period of time, which were suspended when she returned to work with no loss of earnings. She has received various treatments for this injury, including multiple surgeries and medications to alleviate her pain, from various physicians. These physicians include: Jay S. Talsania, M.D., the orthopedic surgeon who is primarily responsible for the treatment of Claimant's right hand injury; Eugene Gorski, M.D., Claimant's primary care physician who was responsible for managing Claimant's pain medications; and Dr. Jalali, a pain management specialist who assumed responsibility for managing Claimant's medications on March 31, 2015. The current Penalty Petition is based on Employer's nonpayment of medications prescribed by Dr. Jalali beginning in November 2015.

### B. *Prior Litigation*

Claimant's receipt of benefits and the payment of her medical bills for her work-related injury have been the subject of much litigation. By decision and order of April 15, 2014, WCJ Wayne Rapkin (WCJ Rapkin) granted Claimant's

2

reinstatement, review, and penalty petitions. Claimant's benefits were reinstated from October 7, 2010, through November 10, 2010, and from August 23, 2012, onward. WCJ Rapkin amended the description of the injury, based on the testimony of Dr. Talsania, from "right hand," as described in the NCP, to "scapholuna[t]e ligament tear, status post scope and debridement, status post recent capsulodesis, de[]Quervain's tendonitis, index trigger, and cubital tunnel." (WCJ Hemak Decision, Findings of Fact (Hemak FOF) ¶¶ 2-3.) In addition, WCJ Rapkin ordered Employer to pay penalties based on its "failure to pay medical bills on and after August 23, 2012, and penalties for failure to reimburse Claimant's mileage expense[s] for medical treatment." (*Id.* ¶ 3.)

On July 6, 2016, WCJ Caravaggio issued a decision[2] denying Claimant's petitions to review compensation benefits and medical treatment and/or billing, which Claimant filed on June 30, 2015. *Zito I*, slip op. at 1. Through these petitions, Claimant "sought to expand the description of [her work-related] injury to include brachial plexopathy, neuropathic pain, cervical radiculitis, rotator cuff injury[,] and possible [Complex Regional Pain Syndrome] of the right upper extremity." *Id.* at 3 (second alteration added). Claimant relied on Dr. Jalali's opinion, and that of another physician, that her work injury included those injuries. WCJ Caravaggio did not credit those opinions, and, therefore, found that Claimant had not met her

---

[2] Prior to WCJ Caravaggio's July 2016 decision, she issued a decision on March 31, 2016, granting penalty, reinstatement, and review petitions filed by Claimant. WCJ Caravaggio set aside an impairment rating evaluation (IRE) and reinstated Claimant's total disability benefits as of July 9, 2014, that had been modified based on the IRE. (Hemak FOF ¶ 4; WCJ Caravaggio Decision, March 31, 2016, Conclusion of Law ¶ 3.) WCJ Caravaggio also directed Employer to pay the medical bills that WCJ Rapkin had ordered Employer to pay, which had not been paid. She further directed Employer to pay the 25-percent penalty on the unpaid medical bills imposed by WCJ Rapkin, an additional 25-percent penalty on those unpaid medical bills, and a 50-percent penalty "on the amount of penalties that [WCJ] Rapkin had previously ordered to be paid." (Hemak FOF ¶ 4; WCJ Caravaggio Decision, March 31, 2016, Order.)

3

burden of proving that her work-related injury included these additional injuries. *Id.* at 6-7. The Board affirmed WCJ Caravaggio's decision on January 13, 2017, and this Court affirmed in *Zito I*.

### C. Current Penalty Petition

While Claimant's appeals of WCJ Caravaggio's July 2016 decision were pending before the Board and this Court, Claimant filed the current Penalty Petition on September 21, 2016, asserting that Employer was not paying for reasonable and necessary medical expenses including medications prescribed by Dr. Jalali that were causally related to her work injury.[3] (Hemak FOF ¶ 7; Reproduced Record (R.R.) at 64a.) The Penalty Petition was assigned to WCJ Hemak, who held hearings at which Claimant presented her own testimony and the deposition testimony of Dr. Jalali, Alliance's Office Manager, and Alliance's Collections Manager.

Claimant testified as follows.[4] Dr. Talsania initially prescribed the medications for Claimant's work-related injury, after which Dr. Gorski assumed responsibility for her medications. Ultimately, Dr. Jalali took over her pain management and, when he did, Claimant was required "to sign an agreement stating that she would not seek or accept pain medication from any other physician." (Hemak FOF ¶ 12.) "The only change Dr. Jalali made to Claimant's medications

---

[3] Claimant filed a second penalty petition, asserting that Employer failed to consistently pay her wage loss benefits. After Employer "could not provide any explanation for the gaps" in the payments or its erratic payments, WCJ Hemak granted that penalty petition. (Hemak FOF ¶ 11; WCJ Hemak Decision, Conclusion of Law (Hemak COL) ¶¶ 2-3.) Employer did not appeal that decision.

[4] Claimant's testimony is summarized in Hemak FOF ¶¶ 10-12 and is found at pages 99a-107a and 119a-22a of the Reproduced Record.

4

was to switch [her] from Neurontin to Trilept[al] due to some side effects [she] was experiencing with Neurontin." (*Id.* ¶¶ 12, 15.)

Dr. Jalali's January 10, 2017 deposition testimony[5] set forth his professional qualifications, a history of Claimant's pain management regimen, and his treatment of Claimant since he assumed her medication management in March 2015. He is board-certified in pain management and anesthesiology, and has focused his practice on pain management for the past 20 years. Claimant was referred to him, and her primary complaint was and has remained right upper extremity pain. As part of Claimant's treatment with Dr. Jalali, Claimant undergoes random drug screening and is required to agree annually not to obtain pain medication from other medical providers. (R.R. at 136a-37a.) In terms of Claimant's medications, "Dr. Jalali took over Claimant's anti-convulsant therapy, muscle relaxant therapy[,] and narcotic management therapy." (Hemak FOF ¶ 15.) As part of his management of Claimant's medications, Dr. Jalali added a long-acting opioid (Hysingla), switched Percocet to Oxycodone because Claimant did not need the acetaminophen that is in Percocet, changed Neurontin to Trileptal due to Claimant developing adverse reactions to the former, and switched Tizanidine to Lorzone as the former was causing sedation. (*Id.*; R.R. at 139a-40a.) Other than adding the Hysingla, Dr. Jalali explained his medications did not differ significantly from those prescribed by Dr. Gorski as he was prescribing the same classification of medications. (R.R. at 148a.) In other words, he exchanged one narcotic medication for another, one anti-convulsant medication for another, and one muscle relaxant for another. (*Id.* at 139a-40a, 148a.) After further monitoring, Dr. Jalali switched Claimant from Lorzone to

---

[5] This deposition testimony is summarized in Hemak FOF ¶ 15 and is found at pages 128a-59a of the Reproduced Record. Attached to that deposition as an exhibit was Dr. Jalali's deposition testimony from *Zito I*.

5

Amrix due to an adverse reaction and added Melatonin to aid Claimant's sleeping patterns. He continued to monitor these medications to address Claimant's complaints of pain in her right upper extremity.

On September 13, 2016, Dr. Jalali changed his diagnoses from those he gave in *Zito I* to the ones found to be work-related by WCJ Rapkin. This change, he explained, "would not impact the medication management since the treatment would remain the same regardless of the diagnosis attached to the condition." (Hemak FOF ¶ 15.) Dr. Jalali opined this was because, regardless of the diagnoses, Claimant "had a combination of localized pain as well as what appears to be neuropathic-type pain as far as the pain being both aching as well as tender in nature." (R.R. at 147a.) Dr. Jalali confirmed the treatment he provides to Claimant is related to her October 7, 2010 work injury and the purpose of the treatment is "to address Claimant's right upper extremity pain." (Hemak FOF ¶ 15.)

Office Manager testified in her deposition as follows.[6] Alliance provides workers' compensation claimants pharmaceuticals, and started providing Claimant her medications on June 2, 2015. Office Manager is responsible for submitting bills to employers and, if payment is denied, a different Alliance department takes over. On May 26, 2015, Alliance submitted letters of medical necessity by Dr. Jalali for the prescriptions. A separate letter was submitted on August 20, 2016, for the Amrix. Employer stopped paying for Claimant's prescriptions on November 19, 2015. On various dates between November 20, 2015, and December 13, 2016, Alliance submitted or resubmitted to Employer Health Care Finance Administration (HCFA) forms, invoices, Workers' Compensation Bureau LIBC-9 forms, and prescriptions from Dr. Jalali reflecting the medications were for Claimant's work-

---

[6] This deposition testimony is summarized in Hemak FOF ¶ 16 and is found at pages 281a-304a of the Reproduced Record.

related chronic intractable pain. Those forms and documents provided explanations of why the medications were necessary to control Claimant's right hand pain and muscle spasms and to treat Claimant's chronic intractable pain. (R.R. at 335a-40a, 345a-48a, 357a-60a, 369a-72a, 382a-85a, 404a-06a, 415a-18a, 427a-30a, 437a-40a, 447a-50a, 457a-60a, 466a-69a, 486a-88a, 503a.) With few exceptions, Employer denied payment for these prescriptions. Alliance had most recently submitted the above items to Employer for payment on January 10, 2017.

Collections Manager testified in her deposition as follows.[7] After Alliance submitted invoices and materials to Employer, Employer denied payment "per adjuster's request." (Hemak FOF ¶ 17.) Alliance submitted numerous denied invoices for fee reviews under the Act, challenging Employer's denials. Numerous Fee Review Determinations were issued directing Employer to pay Alliance for the prescriptions, but Alliance never received payment from Employer. Other fee reviews were denied due to lack of prescription or certificate of medical necessity, but Alliance was appealing those determinations. Still, other fee reviews were denied due to outstanding issues as to causal relatedness to the work injury. The total outstanding balance for Claimant's prescriptions was $39,592.67.

In its defense, Employer "explained that the subject bills were not being paid in light of the Decision and Order of [WCJ] Caravaggio dated July 6, 2016, wherein [WCJ] Caravaggio found that the diagnoses for which Dr. Jalali was treating Claimant were not part of the work-related injury." (*Id.* ¶ 10.)

---

[7] This deposition testimony is summarized in Hemak FOF ¶ 17 and is found at pages 305a-31a of the Reproduced Record.

7

## D. WCJ Hemak's Decision

Reviewing the evidence, WCJ Hemak noted that Employer did not present "any expert testimony to contradict Dr. Jalali's testimony nor any factual testimony to contradict the testimony of" Office Manager and Collections Manager. WCJ Hemak further explained that Employer has "not challenged the credibility of these witnesses in any material respect." (*Id.* ¶ 18.) Accordingly, WCJ Hemak accepted that testimony as fact. (*Id.*) WCJ Hemak "specifically accepted" Dr. Jalali's testimony that the treatment and medications he has prescribed are directly related to Claimant's October 7, 2010 work injury. He rejected Employer's arguments "that the subject treatment is related to the diagnoses rejected in the Decision and Order of [WCJ] Caravaggio dated July 6, 2016" because "Dr. Jalali credibly refute[d] that argument and [Employer did] not present[] any evidence to suggest otherwise." (*Id.* ¶ 19.) Based on his findings, WCJ Hemak found that Claimant met her burden of proving that Employer violated the Act "by failing to pay Claimant's work-related prescription expenses[,] warranting an imposition of penalties in the amount of fifty-percent (50%) of the outstanding prescription[s], . . . in light of the unreasonable delay."[8] (WCJ Hemak Decision, Conclusion of Law ¶ 4.)

## E. The Board's Opinion

Employer appealed to the Board, arguing WCJ Hemak erred in granting the Penalty Petition because Claimant was attempting to relitigate issues that were decided by WCJ Caravaggio in her July 6, 2016 decision. Employer argued that the question of its liability for the medications prescribed by Dr. Jalali was addressed in that decision and, therefore, the current petition was barred by res judicata and/or

---

[8] WCJ Hemak denied that part of Claimant's penalty petition based on Employer's nonpayment of Dr. Jalali's medical bills. (Hemak COL ¶ 5.) Claimant did not appeal that denial.

8

collateral estoppel. The Board disagreed, concluding that WCJ Caravaggio's decision concerned whether the description of Claimant's injury should be expanded. The Board held that, while Dr. Jalali offered testimony and was found not to be credible in that case, WCJ Caravaggio's decision did not address any specific bills related to Dr. Jalali's prescriptions, which is the issue in the current proceeding. According to the Board, Dr. Jalali's testimony in this matter, found credible by WCJ Hemak, acknowledged the judicially determined injury and, using that description, opined that the prescriptions are related to Claimant's work injury. Therefore, the Board held that neither the causes of action nor the issues were the same and affirmed WCJ Hemak's Decision. Employer now petitions this Court for review.[9]

## II. The Parties' Arguments

On appeal, Employer argues that WCJ Hemak abused his discretion in accepting Dr. Jalali's testimony and granting the Penalty Petition because that testimony was rejected by WCJ Caravaggio, and the issue of Employer's liability for any treatment provided or prescribed by Dr. Jalali was addressed in *Zito I*. In that decision, Employer asserts, WCJ Caravaggio, and this Court, specifically rejected Dr. Jalali's treatment and diagnoses as not being causally related to Claimant's October 7, 2010 work injury. Employer argues that, through the petitions in *Zito I*, Claimant also sought the payment for Dr. Jalali's treatment and

---

[9] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 n.4 (Pa. Cmwlth. 2008).

9

prescriptions, which are at issue in the current penalty proceedings. Because this issue was previously resolved in a final determination, Employer contends Claimant is precluded from relitigating it under res judicata and/or collateral estoppel. Employer asserts, therefore, that Claimant cannot meet her burden of proving that Employer violated the Act by failing to pay for medical treatments that were causally related to her work injury. Employer further challenges the finding that Dr. Jalali prescribed the same medications as Dr. Gorski because Dr. Jalali actually prescribed four new medications when he assumed responsibility for Claimant's medications.

Claimant responds that WCJ Hemak and the Board correctly rejected Employer's claim that res judicata and/or collateral estoppel applies here because she is not re-litigating an issue that has been previously decided. She contends that WCJ Caravaggio's July 6, 2016 decision, and this Court's decision in *Zito I*, concerned only whether the description of Claimant's work injury should be expanded. Claimant notes that WCJ Caravaggio "did not address any specific medical bills related to Dr. Jalali's prescriptions, which is the main subject of the instant case," and that Dr. Jalali provided new testimony indicating that the medications he prescribed for Claimant were causally related to the injuries accepted by WCJ Rapkin. (Claimant's Brief at 18.) Citing the testimony of Office Manager, Collections Manager, and Dr. Jalali offered in this matter, which WCJ Hemak credited, Claimant argues that, notwithstanding the rejection of Dr. Jalali's diagnoses in *Zito I*, she met her burden of proving that Dr. Jalali's prescriptions were causally related to her October 7, 2010 work injury and that Employer violated the Act when it refused to pay for those prescriptions.

10

### III.   Analysis

Section 306(f.1)(1)(i) of the Act provides, in relevant part, that "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). "Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment[s] in the absence of a final receipt, an agreement, a supersedeas[,] or any other order of the WCJ authorizing such action." *McLaughlin v. Workers' Comp. Appeal Bd. (St. Francis Country House)*, 808 A.2d 285, 288 (Pa. Cmwlth. 2002). If an employer does so, it can be liable for penalties under the Act. *Id.* at 290.

Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i),[10] permits the imposition of penalties where an employer violates the Act, rules, or regulations, which the claimant bears the burden of proving. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). If the claimant establishes a violation, the employer may offer rebuttal evidence to show that no violation occurred. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037, 1047 (Pa. Cmwlth. 2011). A WCJ is not required to award penalties, even if a violation of the Act is proven, and the decision to award penalties, or not, is within the WCJ's discretion. *Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 176 (Pa. Cmwlth. 2004). We will not reverse that decision absent an abuse of discretion. *Id.*

---

[10] Section 435 was added by Section 3 of the Act of February 8, 1972.

Initially, we note that in the absence of WCJ Caravaggio's July 6, 2016 decision and *Zito I*, the credited testimony of Dr. Jalali, Office Manager, and Collections Manager supports the grant of the Penalty Petition and imposition of penalties against Employer. There is no dispute that Claimant sustained numerous work-related injuries, as found by WCJ Rapkin, and that she **requires ongoing medical treatment**, including prescription medications, for those injuries. And, there is nothing in the record indicating that Employer has obtained an order, final receipt, or supersedeas ending its liability to pay for Claimant's work injuries. Thus, Employer remains liable to do so. 77 P.S. § 531(1)(i); *McLaughlin*, 808 A.2d at 288.

Dr. Jalali credibly testified that he assumed sole responsibility for Claimant's medications from Dr. Gorski and that Claimant agreed not to seek medications from other physicians. After assuming responsibility for Claimant's medications, Dr. Jalali added a long-acting opioid and changed Claimant's existing narcotic, anti-convulsant, and muscle relaxant medications to those he believed better treated the symptoms related to her work injuries, particularly her chronic pain, with fewer side effects. Noting that Claimant's symptomology remained the same from the beginning of his treatment, Dr. Jalali opined the medications he prescribed were causally related to Claimant's October 7, 2010 work injury, regardless of whether Claimant's diagnoses were those found by WCJ Rapkin or those diagnoses Dr. Jalali had opined. Office Manager credibly testified that Alliance properly submitted invoices, forms, and other accompanying materials, which explained that the prescriptions were for Claimant's muscle spasms and right hand pain, to Employer for payment. Collections Manager credibly explained that the majority of these invoices remained unpaid, in the amount of $39,592.67, despite Fee Review Determinations in Alliance's favor directing Employer to pay the invoices.

12

Employer offered no rebuttal evidence beyond relying on WCJ Caravaggio's July 6, 2016 decision. Because "a reasonable mind might accept [Claimant's credited evidence] as adequate to support a conclusion" that Employer violated the Act by refusing to pay for medical treatment that was causally related to Claimant's work injury, there is substantial evidence to support WCJ Hemak's Decision. *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 n.4 (Pa. Cmwlth. 2008).

Additionally, WCJ Hemak cited Employer's unreasonable delay in payment as justification to impose the 50-percent penalty. Because Employer did not pay for Claimant's prescription medications from November 2015 until at least December 2016, despite there being Fee Review Determinations ordering Employer to do so, this reason is supported by the record. Therefore, the WCJ did not abuse his discretion in imposing the 50-percent penalty. Thus, unless the Penalty Petition is barred by res judicata and/or collateral estoppel, WCJ Hemak's decision will be upheld.

Collateral estoppel prevents the re-litigation of an already-decided issue and will apply in workers' compensation proceedings when: (1) "the issue in the prior adjudication was identical to the one presented in the later action"; (2) "there was a final judgment on the merits"; (3) "the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication"; (4) "the party against whom it is asserted has had a full and fair opportunity to litigate the issue in a prior action"; and (5) "the determination in the prior proceeding was essential to the judgment." *Callaghan v. Workers' Comp. Appeal Bd. (City of Phila.)*, 750 A.2d 408, 412 (Pa. Cmwlth. 2000). Technical res judicata, or claim preclusion, applies where the following is the same: (1) the "identity of the thing sued upon or for"; (2) the "identity of the cause of action"; (3) the "identity of the persons and parties to

13

the action"; and (4) the "identity of the quality or capacity of the parties suing or sued." *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008) (citation omitted). "[C]auses of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings." *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 366 (Pa. Cmwlth. 2001).

Applying these principles here, we discern no error in the Board's conclusion that neither collateral estoppel nor res judicata precluded WCJ Hemak from granting the Penalty Petition. The issue before WCJ Caravaggio was whether the description of Claimant's injury should be expanded and that is what WCJ Caravaggio addressed in her decision. While Dr. Jalali testified regarding what he believed were more accurate diagnoses of Claimant's work injury, WCJ Caravaggio did not find that testimony credible and denied Claimant's request to expand the description of her injury for failing to satisfy her burden of proof, which this Court affirmed in *Zito I*. Although there was a petition regarding medical expenses, absent from WCJ Caravaggio's decision was discussion of **any specific medical bills** related to Dr. Jalali's prescriptions. In the current matter, the main issue is not the description of Claimant's work injury, as it was before WCJ Caravaggio, but whether Employer violated the Act by not paying Claimant's medical bills for her prescription medications. Thus, the issues before WCJ Caravaggio in the prior proceeding and before WCJ Hemak in the current proceeding are **not identical**. Further, as WCJ Caravaggio did not address any medical bills in her decision, it cannot be said that the resolution of that issue "was essential to the judgment" in the prior proceeding. *Callaghan*, 750 A.2d at 412. As for technical res judicata, because "the subject matter and the ultimate issues" are not the same in the prior proceedings before WCJ

14

Caravaggio and the current proceedings before WCJ Hemak, the "causes of action" in the old and new proceedings are not the same. *Henion*, 776 A.2d at 366. For these reasons, neither collateral estoppel nor res judicata bar the grant of the Penalty Petition here.

In addition, we are unpersuaded by Employer's alternative arguments for reversing. First, Employer appears to argue that because WCJ Caravaggio found Dr. Jalali not credible as to the new diagnoses, WCJ Hemak could not consider Dr. Jalali's testimony that the treatment was related to diagnoses found to be work-related by WCJ Rapkin. The WCJ is the ultimate fact finder and sole arbiter of credibility and evidentiary weight. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck),* 664 A.2d 703, 706 (Pa. Cmwlth. 1995). In the current proceeding, Dr. Jalali did not reiterate his prior opinions that Claimant's work injury was something other than that found by WCJ Rapkin. Instead, Dr. Jalali provided **new** testimony, acknowledging the judicially accepted description of Claimant's work injury and, based on that description, opining that the prescriptions had been and were causally related to Claimant's work injury. Dr. Jalali explained that Claimant's symptoms **remained the same** from when he first began treating her in March 2015, prior to any attempt to expand the description of her work injury, and that his treatment of those symptoms would be the same regardless of the diagnoses used. Acting as the fact finder **in this case**, WCJ Hemak was authorized to make his own credibility determinations and factual findings relevant to the questions before him. He did so, accepting the evidence presented by Claimant as credible and finding that Claimant met her burden of proof on her current Penalty Petition. Thus, this is not a basis to reverse the grant of the Penalty Petition.

15

Second, Employer challenges WCJ Hemak's finding that Dr. Jalali did not change Claimant's medications as not being supported by the record because Dr. Jalali prescribed four "new" medications. However, a review of Dr. Jalali's credited testimony reveals that while the specific medications he prescribed Claimant differed from those prescribed by Dr. Gorski, those medications were of the **same type** as had been previously prescribed. Utilizing his expertise as a board-certified anesthesiologist and pain medication specialist, Dr. Jalali reviewed Dr. Gorski's treatment and concluded the particular medications prescribed were not the best suited for Claimant's symptoms and the side effects she was experiencing. Therefore, Dr. Jalali changed those medications to alternatives he believed would be better for Claimant. Reviewing, as we must, this credited evidence in the light most favorable to the party that prevailed before WCJ Hemak, *WAWA*, 951 A.2d at 408, WCJ Hemak's finding is supported by substantial evidence. Accordingly, this, too, is not a basis for reversing the grant of the Penalty Petition.

For the foregoing reasons, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

16

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Greater Hazleton Health Alliance,     :
                Petitioner     :
                              :
            v.           :    No. 1309 C.D. 2018
                              :
Workers' Compensation Appeal     :
Board (Zito),                    :
              Respondent    :

# O R D E R

**NOW**, June 6, 2019, the Order of Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge