382 A.2d 116

**In re Christopher J. F. GROSS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1976.

Decided Jan. 26, 1978.

204

Michael L. Rosenfield, Pittsburgh, David Ferleger, Philadelphia, for appellant.

John Edward Wall, Wilbur McCoy Otto, Stewart M. Flam, John M. Duff, Wm. C. O'Toole, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Allegheny County dismissing appellant's exceptions to an earlier decree denying appellant's petition for injunctive relief.[1] The lower court's dismissal of exceptions was based upon its holding that the legal issue upon which appellant based his prayer for injunctive relief had been rendered moot. Because we also conclude that the issue is moot, for the reasons set forth herein, we affirm the decree.

The material facts, as found in the record and stipulation of facts by counsel for the parties, are as follow: On or about March 24, 1974, appellant, then age 18, was involuntarily committed to Western Psychiatric Institute and Clinic (W.P.I.C.), appellee, pursuant to the then applicable involuntary civil commitment provisions of Section 406 of the Mental Health and Mental Retardation Act of 1966 (Mental

---

1. This Court's jurisdiction is based upon the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202 (Supp.1977–78).

Health Act).[2] Act of October 20, 1966, Special Sess. No. 3, P.L. 96, art. IV, § 406, 50 P.S. § 4406 (1969). Appellant remained in treatment at W.P.I.C. until June 19, 1974, at which time he was released.[3] On February 28, 1975, appellant, then age 19, was again involuntarily committed to W.P.I.C. under the provisions of Section 406 of the Mental Health Act.

On both occasions appellant was diagnosed as suffering from an acute paranoid schizophrenic psychosis. During his periods of treatment as an inpatient at W.P.I.C., appellant was administered an anti-psychotic, psychotropic tranquilizer called trilafon and a second medication, cogentin, designed to mitigate certain side-effects of the trilafon. On numerous occasions appellant indicated to W.P.I.C. staff

**2.** Section 406 then provided in pertinent part that:

> (a) Whenever a person is believed to be mentally disabled, and in need of care or treatment by reason of such mental disability, and examination of such person has been made by a physician or physicians, or for any reason the examination of such person cannot be made, a petition may be presented to the court of common pleas of the county in which a person resides or is, for his immediate examination or commitment to an appropriate facility for examination, observation and diagnosis.

50 P.S. § 4406(a) (1969). Section 102 of the Mental Health Act defined "mental disability" as follows:

> "Mental disability" means any mental illness, mental impairment, mental retardation, or mental deficiency, which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care as provided in this act. It shall include conditions and terms heretofore defined as "insanity," "unsoundness of mind," "lunacy," "mental disease," "mental disorder," "feebleminded," "moron," "idiot" and "imbecile." This term shall not include senility, unless mental illness or mental retardation is superimposed.

*Id.* § 4102. Subsequent to oral argument in the instant case, the General Assembly enacted the Mental Health Procedures Act, (Procedures Act) which repealed Section 406 and the Section 102 definition of "mental disability." Act of July 9, 1976, P.L. 817, No. 143, §.502, 50 P.S. § 7502(a) (Supp.1977–78). The significance of this repealer will be discussed later in this opinion. *See* note 15 *infra.*

**3.** On May 1, 1974, prior to his release from W.P.I.C., appellant filed a petition for injunctive relief to prevent involuntary drug treatment. This prayer for injunctive relief was denied on the same day, and the record indicates that appellant did not appeal from that decree.

members that he did not wish to take the medication. On these occasions appellant was informed by W.P.I.C. staff members that the physicians in charge of his treatment had the authority to compel him to take the medication and that if he did not take the medication orally, the usual method of administration, it would be administered via intramuscular injection. According to the stipulation of facts, only once was appellant given the medication by injection. Appellant later complained of blurred vision, inability to read without magnifying glasses, dryness of the mouth, and tremors, all of which appellant attributed to the medication.[4] The parties agreed that the use of the medications in question was, in the judgment of the W.P.I.C. physicians, the best medically indicated treatment and the most generally accepted method of treatment, although not the only acceptable method.

On May 1, 1975, appellant, while still an inpatient at W.P.I.C., filed a petition for injunctive relief in the Orphans' Court Division of the Court of Common Pleas of Allegheny County seeking to restrain W.P.I.C. from administering medication against his will. The petition was denied on the same date, but the court granted appellant leave to amend the petition, which he did on the following day, alleging in the amended petition that Section 417 of the Mental Health Act,[5] upon which W.P.I.C. relies for its authority to adminis-

4. It was stipulated that such side-effects are common to all anti-psychotic medications. It was further stipulated that W.P.I.C. records indicated that appellant displayed signs of tremors upon his admission to W.P.I.C. and prior to being administered the trilafon.

5. Section 417 of the Mental Health Act provides:
 (a) The director of any facility shall be in charge of all services afforded to any person admitted or committed to such facility including all maintenance services, custody, and employment of such persons, and shall also be in charge of the diagnosis, treatment and care to be given such person by reason of mental or physical disability. If the director is not a physician, a physician shall be in charge of all medical diagnosis, treatment and care to be rendered such persons.
 (b) The director of any facility, in his discretion, may allow any person admitted or committed to be treated or counseled by his family or personal psychiatrist, physician, or other medical practi-

ter the medication, was unconstitutional. In a decree nisi dated May 2, 1975, the lower court dismissed appellant's amended petition for injunctive relief.[6] Appellant, on May 2, 1975, filed exceptions to this dismissal. On May 28, 1975, appellant was released from W.P.I.C.[7] After oral argument on June 2, 1975, the lower court *en banc*, in an opinion dated August 25, 1975, dismissed appellant's exceptions, holding that appellant's release from W.P.I.C. rendered the underlying issue moot. On appeal to this Court, appellant, in addition to contending that the questions presented are not moot, claims that Section 417 is overly broad and thus violative of due process and further asserts that involuntarily committed mental patients have a common law right to refuse treatments, which right cannot, in the absence of judicially declared incompetence, be negated by the state. Since we find, for the reasons set forth below, that the appeal is moot, we need not address the merits of appellant's latter claims.

tioner, psychologist, social worker or other person. If such personal treatment or counseling is allowed, the same shall be subject to the supervision of the physician bearing medical responsibility for the facility, if any. Where such physician is not necessary to the operation of the facility, such personal treatment or counseling shall be under the supervision of the director.

(c) The director of any facility may in his discretion by and with the advice of two physicians not employed by the facility, determine when elective surgery should be performed upon any mentally disabled person admitted or committed to such facility where such person does not have a living parent, spouse, issue, next of kin or legal guardian as fully and to the same effect as if said director had been appointed guardian and had applied to and received the approval of an appropriate court therefor.

50 P.S. § 4417 (1969).

6. In his brief opinion upholding the validity of Section 417, the chancellor reasoned that since appellant had been found to be mentally ill, he was in no position to determine the nature of the treatments he should be administered.

7. Upon appellant's release from W.P.I.C., appellant's private physician agreed to treat appellant on an out-patient basis on the condition that appellant continue to take anti-psychotic medication as prescribed by appellant's physician. It is stipulated that as of June 26, 1975 appellant was still being treated as an out-patient by his physician and was taking the prescribed medication. *See* note 15 *infra*.

 An accurate description of those circumstances which raise the issue of mootness is provided by Professor Gunther, who writes:

The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *G. Gunther, Constitutional Law* 1578 (9th ed. 1975).

It is well established in this jurisdiction that this Court will not decide moot questions. *Wortex Mills v. Textile Workers,* 369 Pa. 359, 85 A.2d 851 (1952). As explained above, a legal question can become moot on appeal as a result of an intervening change in the facts of the case. For example, in *Meyer v. Strouse,* 422 Pa. 136, 221 A.2d 191 (1966) involving an action in quo warranto, the appellant appealed from the lower court's judgment which ordered his ouster from the office of tax collector. When the appeal reached this Court, the appellant's term of office had already expired, and this Court held that the intervening expiration of the appellant's term of office rendered the appeal moot. *Id. See Schuster v. Gilberton Coal Co.,* 412 Pa. 353, 194 A.2d 346 (1963) (an intervening, superseding contract and separate pending litigation thereunder rendered appeal under original contract moot); *Ridley Park Shopping Center v. Sun Ray Drug Co.,* 407 Pa. 230, 180 A.2d 1 (1962) (declaratory judgment action to establish appellant's right to possession of property made moot an appeal due to appellant's intervening conveyance of subject property).

Similarly, an issue can become moot due to an intervening change in the applicable law. In *Conti v. Pa. Dept. of Labor & Industry,* 405 Pa. 309, 175 A.2d 56 (1961), this Court held an appeal to be moot where the question involved the

validity of a minimum wage order executed by the Secretary of Labor and Industry based upon the then existing statutory authority and thereafter, during the pendency of the action, the General Assembly enacted the Minimum Wage Act of 1961, P.L. 1313. In holding that the appeal was moot, this Court stated:

> Since the entry of the lower court's order the Pennsylvania Legislature in the 1961 session, enacted 'The Minimum Wage Act of 1961,' P.L. 1313, to supplement the provisions of the Act of 1937, supra, which initially established the regulation of minimum wages in Pennsylvania. Section 5(a) of the Act of 1961 (effective January 1, 1962), provides for the payment of a minimum wage of $1.00 per hour to every employee in any occupation except 'as may otherwise be prescribed.' Admittedly, none of the occupations dealt with in the instant action are exempt. Hence, the question basically raised by this appeal is moot. It is now impossible to grant relief by deciding the issue involved since no actual controversy exists. It has long been the rule in Pennsylvania that this Court will not decide moot questions. We will do so only in rare instances where exceptional circumstances exist or where questions of great public importance are involved: *Id.* at 310–11, 175 A.2d at 57 (Citations omitted).

*See Salisbury Twp. v. Sun Oil Co.*, 406 Pa. 604, 179 A.2d 195 (1962) (challenge to ordinance held moot on appeal due to expiration of ordinance); *N. Pa. Pwr. Co. v. Pa. P.U.C.*, 333 Pa. 265, 5 A.2d 133 (1939) (constitutional challenge to statute held moot on appeal due to intervening amendment enacted by legislature), *overruled on other grounds, York v. Pa. P.U.C.*, 449 Pa. 136, 295 A.2d 825 (1972).

This Court is even more reluctant to decide moot questions which raise constitutional issues. *Wortex Mills v. Textile Workers, supra.* In *Wortex Mills* this Court was asked to decide, as a constitutional matter, whether peaceful, organizational labor union picketing was legal; in *Wortex Mills* the strike which caused the picketing had ended by the time

the appeal reached this Court. In declining to reach the constitutional question, this Court observed:

" 'Constitutional questions are not to be dealt with abstractly.' "

*Id.* at 370, 85 A.2d at 857, *quoting, Bandini Petroleum Co. v. Superior Ct.*, 284 U.S. 8, 22, 52 S.Ct. 103, 108, 76 L.Ed. 136 (1931). The United States Supreme Court has described such judicial reluctance as "the exercise of judicial restraint from unnecessary decision of constitutional issues." *Kremens v. Bartley*, 431 U.S. 119, 136, 97 S.Ct. 1709, 1719, 52 L.Ed.2d 184 (1977), *quoting, Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974).

The instant appeal presents a situation involving an intervening change in the factual posture of the case as well as an intervening change in the applicable law. Appellant is no longer an inpatient at W.P.I.C. and, therefore, is no longer being administered medication by W.P.I.C. against his will. Appellant is now being treated by his own physician. In short, there was nothing for the lower court to enjoin, nor can this Court now order the injunctive relief sought below.[8] *See Allen v. Birmingham Twp.*, 430 Pa. 595, 244 A.2d 661 (1968) (appeal from denial of injunction to prevent excavation of land held moot where excavation had already been completed); *Strassburger v. Philadelphia Record Co.*, 335 Pa. 485, 6 A.2d 922 (1939) (appeal from denial of injunction to prevent annual shareholder meeting held moot where meeting had already been held according to by-laws).

Of equal or greater significance than the altered factual posture of the instant appeal is the fact that three months after oral argument the legislature passed the Mental

8. A different situation is presented in cases involving a prayer for damages or where the appellant is suffering a continuing harm. In such cases, this Court has reviewed damage claims and has reached the merits of the issues underlying an appellant's claim of continuing harm. *Sigal v. Mfrs. Light and Heat Co.*, 450 Pa. 228, 299 A.2d 646 (1973) (continuing harm); *Ridley Park Shopping Center v. Sun Ray Drug Co.*, 407 Pa. 230, 180 A.2d 1 (1962) (appellate review of damage claim).

Health Procedures Act (Procedures Act).[9] Act of July 9, 1976, P.L. 817, No. 143, § 101 et seq., 50 P.S. Section 7101 et seq. (Supp.1977–78); see note 2, supra. Appellant's contention, in summary, is that Section 417 of the Mental Health Act[10] confers unfettered discretion upon the directors of mental health facilities as to treatment and, therefore, violates appellant's alleged constitutional and common law right to refuse treatment. It is true that the Procedures Act did not repeal Section 417 of the Mental Health Act. See 50 P.S. § 7502(a) (Supp.1977–78). However, since both acts govern the treatment of the mentally disabled, they are in pari materia and must be construed together, if possible, as one statute. Statutory Construction Act of December 6, 1972, P.L. 1339, No. 290, Section 3, 1 Pa.C.S.A. § 1932 (Supp.1977–78). Whether Section 417 did confer unbridled discretion upon directors of mental health facilities prior to the enactment of the Procedures Act is a question we need not decide, because as the law stands now it is clear that the discretion previously conferred under Section 417 has been significantly restricted by the Procedures Act.[11]

The entire text of the Procedures Act shows an enlightened legislative endeavor to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights. The legislative policy of the Procedures Act is set forth in Section 102:

It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to

**9.** Since appellant was subjected to involuntary treatment prior to the effective date of the Procedures Act, the Act became applicable as to appellant 180 days after the effective date. 50 P.S. § 7501 (Supp. 1977–78). See 1976 Op.Atty.Gen. No. 23. When the Procedures Act became applicable to appellant he had already been released, for the last time, from inpatient care at W.P.I.C.

**10.** For the text of Section 417, see note 5 supra.

**11.** We look to the present state of the law and not as it stood below. Kremens v. Bartley, 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184, citing, Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1976).

persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected. Treatment on a voluntary basis shall be preferred to involuntary treatment; and in every case, the least restrictions consistent with adequate treatment shall be employed. Persons who are mentally retarded, senile, alcoholic, or drug dependent shall receive mental health treatment only if they are also diagnosed as mentally ill, but these conditions of themselves shall not be deemed to constitute mental illness. 50 P.S. § 7102 (Supp.1977–78).

Section 104 of the Act defines "adequate treatment" as follows:

> Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness. It shall be provided to all persons in treatment who are subject to this act. It may include inpatient treatment, partial hospitalization, or outpatient treatment. Adequate inpatient treatment shall include such accommodations, diet, heat, light, sanitary facilities, clothing, recreation, education and medical care as are necessary to maintain decent, safe and healthful living conditions.

> Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery. *Id.* § 7104.

Of particular relevance is the Procedures Act's requirement that an individualized treatment plan be formulated for each person being treated under the Act. *Id.* § 7106. This treatment plan and the manner of its formulation are described in Section 107:

> Individualized treatment plan means a plan of treatment formulated for a particular person in a program appropriate to his specific needs. To the extent possible, the plan shall be made with the cooperation, under-

standing and consent of the person in treatment, and shall impose the least restrictive alternative consistent with affording the person adequate treatment for his condition. *Id.* § 7107.

Thus, not only does the Procedures Act mandate that the treatment plan impose the least restrictive alternative consistent with adequate treatment, it also seeks the cooperation, understanding, and consent of the patient.[12] Although Section 417 of the Mental Health Act was not repealed by the Procedures Act, it can hardly be disputed that the Procedures Act significantly circumscribes the discretion vested in mental health facility directors by Section 417. What is even more obvious is that by requiring patient participation, Section 107 of the Procedures Act strikes directly at the heart of appellant's constitutional and common law attack on Section 417 of the Mental Health Act. In short, Section 107 of the Procedures Act addresses itself to those very rights that appellant sought to establish in the court below. Appellant's release from treatment at W.P.I.C. coupled with the subsequent enactment of the Procedures Act has rendered this appeal moot.

Appellant next contends that even if his case is moot, this Court should nonetheless reach the merits of his claim, because it presents a question of great public importance, thus coming within one of the well-organized exceptions to the mootness doctrine. *Meyer v. Strouse, supra* (dicta); *Schuster v. Gilberton Coal Co., supra* (dicta); *Ridley Park*

12. Whether the qualifying phrase in Section 107, i. e. "to the extent possible" would permit a course of treatment not consented to by an involuntarily committed patient is a question that must be left open for another day where we have before us a commitment under the Procedures Act. *See* 50 P.S. § 7107 (Supp.1977–78).

Section 108 of the Procedures Act requires that a patient be reexamined and the treatment plan reviewed at least once every 30 days and reformulated if necessary. 50 P.S. § 7108 (Supp.1977–78). Although we expressly do not so hold, a fair reading of Sections 107 and 108 could lead to the conclusion that a patient should participate in any reformulation of his or her treatment plan. *See id.* §§ 7107 and 7108. At any rate the discretion vested in mental health facility directors by Section 417 of the Mental Health Act seems broad enough to allow a director to require such patient participation. *See* note *5, supra* for the text of Section 417.

*Shopping Center v. Sun Ray Drug Co., supra* (dicta); *Conti v. Dept. of Labor & Industry, supra* (dicta); *Wortex Mills v. Textile Workers, supra* (dicta); *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976); *Commonwealth ex rel Finken v. Roop,* 234 Pa.Super. 155, 339 A.2d 764 (1975), *cert. denied,* 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976). It is conceded that the questions raised by appellant concerning the rights of involuntarily committed mental patients are of public importance. However, as the case law cited above indicates, the appellate courts of this jurisdiction have infrequently invoked the great public importance exception to the mootness doctrine. In *Wortex Mills* this Court was confronted with a significant question involving the interface between constitutional law and labor law and still declined to resolve the issue, because it was moot. *Wortex Mills v. Textile Workers, supra.* What is controlling in the instant case is that the legislature obviously recognized the significance of questions involving rights of mental patients and, therefore, enacted the Procedures Act subsequent to the time that this appeal was taken. As noted before, the Procedures Act deals squarely with the issues appellant raises. In view of the new comprehensive statutory scheme, there is no longer a need to assess the validity of the former scheme.[13] Thus, we hold that the instant appeal does not fall within the great public importance exception to the mootness doctrine.

**13.** Recently the United States Supreme Court held moot a similar challenge to the Mental Health Act due to the intervening passage of the Procedures Act. *Kremens v. Bartley,* supra. In so holding, the Court, after noting its policy of restraint from "passing prematurely on constitutional issues", suggested that public importance or convenience alone should not free an appellate court from adherence to rules of justiciability such as mootness:

"The fact that it would be convenient for the parties and the public to have promptly decided whether the legislation assailed is valid, cannot justify a departure from these settled rules . . . ." *Kremens v. Bartley,* supra, 431 U.S. at 119, 136, 97 S.Ct. at 1714, 1718, *quoting Franks v. Bowman Transp. Co.,* 424 U.S. 747, 756 n.8, 96 S.Ct. 1251, 1260 n.8, 47 L.Ed.2d 370 (1976) *and Ashwander v. Valley Authority,* 297 U.S. 288, 345, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ Finally, appellant contends that notwithstanding the mootness of his claim this Court should reach its merits, because the question presented is capable of replication yet escaping judicial review, and, thus, is encompassed by another exception to the mootness doctrine. This Court has in the past reviewed moot questions which are necessarily recurring ones.[14] *Devlin v. Osser*, 434 Pa. 408, 411, 254 A.2d 303, 304 (1969); *Miller v. Lutheran Ass'n.*, 331 Pa. 241, 200 A. 646 (1938) (question involved possible recurrence of trespass to land); *Werner v. King*, 310 Pa. 120, 164 A. 918 (1933) (question concerned duty that public official had to perform every year). Appellant attempts to bring his case within the scope of this exception by arguing in essence that he could be recommitted, involuntarily treated, and then released again before an appeal from a denial of injunctive relief could reach this Court. While this argument would be impressive if the basis of our holding of mootness rested solely upon the fact of appellant's discharge from W.P.I.C., it is not persuasive where mootness has been determined because of a change in the law, particularly where this change attempts to address the objections raised by appellant.[15] Thus, we conclude that the instant appeal does not present a necessarily recurring question.

14. A similar exception to the mootness doctrine is recognized by the United States Supreme Court. *See e. g. Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

15. It should be noted that while both of appellant's previous involuntary commitments were the result of proceedings under Section 406 of the Mental Health Act, Section 406 was expressly repealed by the Procedures Act. 50 P.S. § 7502 (Supp.1977–78). By now requiring a showing of severe mental disability, the Procedures Act establishes a significantly higher standard for involuntary commitment, thereby substantially reducing the likelihood that appellant will be recommitted. *See id.* § 7301.

From the stipulation of facts, appellant further argues that his latest discharge from W.P.I.C. was conditioned upon his continuation of drug therapy. Appellant then asks us to conclude that should he discontinue the drug therapy now prescribed by his physician, he would be recommitted to W.P.I.C. We agree with appellee that such a conclusion could be reached only if the factual stipulation is distorted. The stipulation shows clearly that it was appellant's own physician, not W.P.I.C., who exacted from appellant the agreement to

Decree Affirmed.

Each party pay own costs.

JONES, former C. J., did not participate in the decision of this case.

continue in drug therapy. *See* note 7 *supra.* The only logical conclusion that can be drawn from this correct statement of the stipulated facts is that should appellant decide to discontinue drug therapy, his physician will cease treating him. Any recommitment of appellant to W.P.I.C. will have to be accomplished under Section 301 of the Procedures Act. 50 P.S. § 7301 (Supp.1977–78).