IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidelines Tree Service, LLC,       :
                 Petitioner       :
                                :
         v.                :    No. 716 C.D. 2021
                                :    Submitted: September 15, 2022
Department of Transportation,      :
                 Respondent    :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                      FILED: December 15, 2022


Sidelines Tree Service, LLC (Sidelines) petitions for review (Petition) of the June 15, 2021 final determination of the Secretary of Transportation (Secretary)[1] denying Sidelines' protest of the rejection of its bid submission in response to the invitation for bids (request for quotes or RFQ) issued by the Pennsylvania Department of Transportation (PennDOT). PennDOT motions to dismiss (Motion) Sidelines' Petition asserting that Sidelines' appeal is moot or, in the alternative, is barred by collateral estoppel due to this Court's decision in *Sidelines Tree Service,*

---

[1] The Acting Executive Deputy Secretary of Transportation served as designee for the Pennsylvania Secretary of Transportation in the present matter. According to Section 1711.1(f) of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. §§ 101-2311, the head of the purchasing agency or his designee shall issue a written determination within 60 days of a bid protest and this determination constitutes the final order of the purchasing agency. 62 Pa. C.S. § 1711.1(f). Accordingly, we refer to the determination in this case as that of the Secretary.

*LLC v. Department of Transportation* (Pa. Cmwlth., No. 134 C.D. 2021, filed September 20, 2021) (*Sidelines I*). For the following reasons, we deny PennDOT's Motion and affirm the Secretary's final determination.

## I. BACKGROUND

### A. Eight County RFQs

A full recitation of the underlying facts may be found in *Sidelines I,* slip op. at 1-15. For our present analysis, we briefly summarize the litigation preceding the present appeal as follows. In August 2020, Sidelines responded to RFQs issued by PennDOT to procure line-clearance tree-trimming services in eight counties in the Commonwealth (Eight County RFQs). *Sidelines I*, slip op. at 2. Despite submitting the lowest bid for the projects, PennDOT determined that Sidelines was not a responsible bidder[2] for the award of the multiple purchase orders. Reproduced Record (R.R.) at 38a. Sidelines protested the non-responsibility determination, and the Secretary upheld PennDOT's determination. *Id*. Sidelines appealed the final determination to this Court, and we affirmed. *See Sidelines I*.

In affirming the Secretary's non-responsibility determination, we held that the Secretary's determination was based on substantial evidence. Specifically, the record showed Sidelines' history of poor performance precluded status as a responsible bidder. *Sidelines I*, slip op. at 19. Sidelines had performed work for PennDOT without ensuring its employees maintained required certifications. *Id*. Sidelines failed to meet its contractual requirements such as maintaining insurance coverage during its previous work for PennDOT. *Id*. at 20. Sidelines failed to

---

[2] According to Section 103 of the Procurement Code, a "responsible bidder" is defined as a "bidder that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa. C.S. § 103.

timely provide contracted personnel and services to PennDOT. *Id*. Notably, we considered that Sidelines provided PennDOT documentation of required Tree Care Industry Association (TCIA) membership and certifications that TCIA ultimately disputed were valid. *Id*. Additionally, Sidelines acknowledged that employees had performed work on a prior PennDOT contract without necessary training or certifications. *Id*. at 21. Thus, the record showed substantial evidence to support PennDOT's non-responsibility determination.

In *Sidelines I*, we also concluded that the Secretary did not abuse her discretion by refusing to hold an evidentiary hearing. Sidelines argued that an evidentiary hearing would have allowed it to support its assertion that it could satisfy the requirements of the Eight County RFQs and cross-examine PennDOT personnel as to the reasons for its determination. We disagreed, holding that Sidelines failed to implicate any conflict or dispute of material fact and that it remained at the Secretary's "sole discretion" to determine whether a hearing was necessary on a bid protest.[3]

### B. Clinton County RFQ

The relevant facts of the present litigation are as follows. In the Spring of 2021, PennDOT sought tree trimming and stump removal services in Clinton County (Clinton County RFQ). R.R. at 37a-38a. To procure these services, PennDOT issued the Clinton County RFQ to providers qualified under the statewide Invitation to Qualify (ITQ). R.R. at 38a. In response to PennDOT's Clinton County RFQ, Sidelines, which remained ITQ qualified, submitted the lowest quote for the Clinton County RFQ. R.R. at 38a.

---

[3] Where the record contains sufficient unchallenged facts to support the determination, a bid protest hearing is not required. *Glasgow, Inc. v. Pa. Dep't of Transp.*, 851 A.2d 1014 (Pa. Cmwlth. 2004).

PennDOT rejected Sidelines' quote and by letter dated April 9, 2021, notified Sidelines of its determination that Sidelines was not a responsible bidder for the Clinton County RFQ. R.R. at 5a. PennDOT reasoned that Sidelines did not provide sufficient documentation of the Occupational Safety and Health Administration (OSHA) training required to work near energized electrical lines, which was required by the Clinton County RFQ Statement of Work (SOW). R.R. at 163a. The SOW specified that "proper training and personnel needed to work around utility lines as required by . . . OSHA . . . [are] the responsibility of the Contractor." R.R. at 163a. In addition, PennDOT noted that its determination was based, in part, on its communications with TCIA, which is responsible for the training, testing, and issuance of certificates for properly trained personnel. *Id.* PennDOT noted concern about the veracity of the information Sidelines submitted to PennDOT regarding its TCIA certifications and concern about Sidelines' ability to meet the requirements of the contracts relative to personnel, good faith performance, and safety. R.R. at 5a-6a.

On April 16, 2021, Sidelines submitted its bid protest to the Secretary pursuant to Section 1711.1 of the Procurement Code, 62 Pa. C.S. § 1711.1.[4] R.R. at 2a. Sidelines argued that PennDOT's non-responsibility determination was "erroneous" because it relied on a purported failure of Sidelines to submit worker certifications. *Id.* However, Sidelines claimed it was not required to submit certifications with the bid proposal. *Id.* Sidelines asserted that it provided the required certifications by email to PennDOT. *Id.* Additionally, Sidelines asserted that PennDOT's determination was improper because it was based on Sidelines' performance during

---

[4] According to Section 1711.1(a) of the Procurement Code, a "bidder . . . that is aggrieved in connection with the solicitation or award of a contract . . . may protest to the head of the purchasing agency in writing." 62 Pa. C.S. § 1711.1(a).

prior contracts. *Id*. Specifically, Sidelines claimed it was improper for PennDOT to rely on its admission during the Eight County RFQs that its employees had performed services without required certifications. *Id*. Sidelines requested a hearing regarding PennDOT's "allegation" of non-responsibility. *Id*. Sidelines requested the opportunity to present evidence of its responsibility and professional qualifications to perform the work contemplated by the Clinton County RFQ. *Id*. at 3a.

On April 30, 2021, PennDOT responded to Sidelines' protest, contending that Sidelines had demonstrated a lack of responsibility to be awarded the work requested. R.R. at 37a. PennDOT alleged that Sidelines failed to meet all Clinton County RFQ requirements, specifically with regards to safety and compliance with OSHA standards. R.R. at 41a. According to PennDOT, the work to be performed at the Clinton County RFQ site was to be performed adjacent to power lines. R.R. at 41a. Because Sidelines had previously submitted TCIA certifications to PennDOT that TCIA asserted were invalid and because Sidelines had previously admitted to not having required certifications, PennDOT reached out to TCIA regarding the submitted certifications. R.R. at 42a. Again, TCIA confirmed that the TCIA certifications Sidelines provided to PennDOT were not valid because test results and other conditions were not met. R.R. at 42a.

PennDOT further argued that it necessarily considered Sidelines' reliability in its responsibility determination and that it properly considered its past experiences with Sidelines and Sidelines' past performance on its contracts. *Id*. PennDOT noted that Sidelines, during the Eight County RFQs, admitted that Sidelines' employees engaged in tree trimming without the required certifications in contravention of OSHA requirements and the terms and conditions of their purchase orders with

5

PennDOT. R.R. at 43a. In conclusion, PennDOT argued that Sidelines knew its employees were required to be trained and certified by TCIA, but that "it failed to do so in the past, and still [has] not obtained the certifications it needs; accordingly, it lacks the responsibility to be awarded work[.]" R.R. at 43a.

William G. Gipe (Gipe), Designated Senior Manager and Division Chief of the Materials and Services Management Division for PennDOT's Bureau of Office Services, who served as contracting officer for purposes of Section 1711.1 of the Procurement Code, 62 Pa. C.S. § 1711.1, and as the custodian of records pertaining to the procurement at issue, attested in support of PennDOT as follows. R.R. at 44a. Regarding the non-responsibility determination, Gipe attested that the determination was, in part, premised on Sidelines' admission that it had previously performed work for PennDOT with employees who lacked necessary certifications. R.R. at 46a. Because the work to be performed under the Clinton County RFQ was to take place adjacent to or under overhead power lines, PennDOT requested proof from Sidelines that its employees had obtained TCIA certifications after the opening of the Clinton County RFQ. *Id*. at 47a. Again, Sidelines provided what it purported to be TCIA certifications; however, TCIA advised PennDOT that Sidelines never submitted required test results or other necessary materials and, therefore, the certifications were not valid. *Id*.

Gipe also attested that he was aware of multiple occasions where Sidelines dropped required workers' compensation and commercial general liability insurance coverage during its performance of work for PennDOT. *Id*. at 47a. Additionally, he attested that Sidelines failed to meet contractual obligations by failing and refusing to timely provide personnel and services to meet PennDOT's needs. *Id*. Gipe

6

attested to Sidelines' historic refusals and failures to meet contractual requirements in prior contracts with PennDOT. *Id*.

On June 15, 2021, the Secretary issued a determination denying Sidelines' protest. R.R. at 162a. The Secretary determined that Sidelines' protest lacked merit under Section 1711.1 of the Procurement Code and that it failed to meet its burden of proving that PennDOT committed error, acted arbitrarily or capriciously, or abused its discretion, which was necessary to support a grant of relief under the Procurement Code. *Id*. at 168a-69a. The Secretary, in agreement with PennDOT, noted that it is "abundantly clear that it is imperative to consider the history of a vendor based on past performances and past experiences with contractors/vendors when making a determination of whether or not a vendor is 'responsible.'" *Id*. at 165a-66a.

## II. ISSUES ON APPEAL

On appeal, Sidelines requests that this Court reverse the Secretary's determination and remand this matter to PennDOT for an evidentiary hearing on the basis that (1) PennDOT's determination is not based upon substantial evidence and (2) PennDOT abused its discretion by failing to grant Sidelines' request for an evidentiary hearing. In its first argument, Sidelines argues that PennDOT's non-responsibility determination lacks support by substantial evidence, asserting that PennDOT's only rationale for its determination in this case results from circumstances that occurred during the Eight County RFQs and previous contracts. Sidelines' Br. at 12. Sidelines contends that PennDOT is attempting to use its admission that it performed contracts without the required certifications in the past "to justify rejection of Sidelines' bid." *Id*. at 13. In its second argument, Sidelines asserts that PennDOT abused its discretion by denying Sidelines' request for an

7

evidentiary hearing because "there is nothing in the record to connect the admitted and self-reported technical non-compliance by Sidelines on a different contract in 2019 with its prospective ability to complete the performance of an entirely new one county contract[, the Clinton County RFQ,] one and a half years later." Sidelines' Br. at 14.

In response to Sidelines' Petition, PennDOT motions to dismiss Sidelines' appeal arguing that it is moot or, in the alternative, that it is barred by the doctrine of collateral estoppel. PennDOT contends that there are "no material differences in fact or law between the first and second appeals filed by Sidelines." PennDOT's Br. at 6. Specifically, PennDOT alleges that in the two cases, the "services were the same, the facts were the same, the procurement protest was the same[,] and the final result in the first appeal supports the same result in the second appeal." *Id*. at 6.

In response to PennDOT's Motion, Sidelines argues that its Petition cannot be dismissed for mootness because *Sidelines I* did not change the facts or law with respect to the present controversy. Sidelines' Br. at 10. Additionally, Sidelines argues that its Petition is not barred by collateral estoppel because the issue in the present case "is not identical" to the issue litigated and decided in *Sidelines I*. Sidelines' Br. at 12. Specifically, Sidelines points out that the Eight County RFQs dealt with eight specific contracts, while the Clinton County RFQ involves a single contract and, therefore, issues regarding manpower and coverage are not raised in this case. *Id*. at 11.

### III. DISCUSSION

Section 1711.1(i) of the Procurement Code, 62 Pa. C.S. § 1711.1(i), sets forth this Court's standard for deciding appeals from final determinations concerning bid protests. This Court will affirm the determination of the purchasing agency so long

as it is clear from the record certified by the purchasing agency "that the determination is [not] arbitrary and capricious, an abuse of discretion or [ ] contrary to law." *Id.*

Initially, we do not agree with PennDOT's assertion that Sidelines' appeal is moot or barred by the doctrine of collateral estoppel. First, we address whether this case is moot. Generally, an actual case or controversy must exist at all stages of a proceeding or the case will be dismissed as moot. *Fraternal Order of Police v. City of Phila.*, 789 A.2d 858 (Pa. Cmwlth. 2002). A case or controversy exists where there is a legal controversy that is not hypothetical, affects individuals in a concrete manner, and has sufficiently adverse parties. *Dow Chemical Co. v. United States Env't Prot. Agency*, 605 F.2d 673, 678 (3d Cir. 1979). The issue of mootness often arises where litigants have standing at the outset of litigation, but changes in the facts or law during the pending litigation deprive a litigant of a necessary stake in the outcome. *In re Gross*, 382 A.2d 116, 119 (Pa. 1978). Where a change in the facts or law render it impossible for the Court to grant relief, the issue is moot. *Id.* at 120. No changes of fact or law in *this* pending litigation have occurred, and a controversy continues to exist which this Court can resolve. Accordingly, Sidelines' appeal is not moot.

Turning to PennDOT's claim that collateral estoppel applies, collateral estoppel forecloses relitigating an issue, but only in cases where the following criteria are met:

> (1) the issue in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in a prior action;

9

and (5) the determination in the prior proceeding was essential to the judgment.

*Callaghan v. Workers' Comp. Appeal Bd. (City of Phila.),* 750 A.2d 408, 412 (Pa. Cmwlth. 2000). Collateral estoppel is designed to "protect[ ] litigants from assuming the burden of re-litigating the same issue with the same party, and [to] promot[e] judicial economy through preventing needless litigation." *McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1148 (Pa. 1996). Under the doctrine of collateral estoppel, where questions of fact that are "essential to the judgment" are litigated by the parties and "determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action." *Krouse v. Workers' Comp. Appeal Bd. (Barrier Enter., Inc.)*, 837 A.2d 671, 675-76 (Pa. Cmwlth. 2003) (citation omitted).

We acknowledge that *Sidelines I* and the present appeal concern <u>nearly</u> identical claims regarding PennDOT's determination of non-responsibility. Despite this fact, the contracts sought by Sidelines were separate contracts for different counties at different times. The Eight County RFQs and the Clinton County RFQ each involve a separate and distinct contract opportunity for Sidelines. Sidelines maintains the right to appeal the Secretary's non-responsibility determination for each RFQ. Accordingly, Sidelines' appeal is not barred by the doctrine of collateral estoppel.

We turn to the merits of Sidelines' appeal. In its first issue, Sidelines appeals the Secretary's determination, arguing that PennDOT's reliance on its past contracts did not produce substantial evidence sufficient to support its non-responsibility determination.

Under Section 512(g) of the Procurement Code, which governs competitive sealed bidding, a purchasing agency shall award a contract to the "lowest responsible

bidder." 62 Pa. C.S. § 512(g). Under Section 103 of the Procurement Code, a "responsible bidder" is defined as a "bidder that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa. C.S. § 103. As this Court has noted, the lowest responsible bidder is "not necessarily . . . . the one whose bid on its face is lowest in dollars, but includes financial responsibility, [and] also integrity, efficiency, industry, experience, promptness, and the ability to successfully carry out the particular undertaking[.]" *Berryhill v. Dugan*, 491 A.2d 950, 952 (Pa. Cmwlth. 1985) (citation omitted).

Here, substantial evidence supports the Secretary's non-responsibility determination. As we outlined in *Sidelines I*, in previous contracts with PennDOT, Sidelines admittedly performed work without ensuring its employees maintained required safety certifications and insurance coverage. Sidelines failed to timely provide contracted personnel and services to PennDOT. Additionally, the record showed not only the previous issues with the TCIA certifications from the Eight County RFQs, but also that <u>again</u> with respect to the Clinton County RFQ, TCIA confirmed that the submitted certifications were not valid. *See* R.R. at 42a. Thus, Sidelines' assertion that the Secretary only relied on information from its past contracts is without merit. Just as it did regarding the Eight County RFQs that we addressed in *Sidelines I*, Sidelines <u>again</u> provided PennDOT documentation of TCIA membership certifications that were not valid. The Secretary properly considered Sidelines' contract history with PennDOT, as well as its conduct related to the Clinton County RFQ. Thus, substantial evidence supports the Secretary's non-responsibility determination.

11

In its second issue, Sidelines argues the Secretary abused her discretion by refusing to hold an evidentiary hearing. Under Section 1711.1(e) of the Procurement Code, the Secretary has "sole discretion" to determine whether a hearing is necessary to decide a bid protest. 62 Pa. C.S. § 1711.1(e). The Secretary's decision will not be reversed unless it is made "with bad faith, fraud, capricious action[,] or abuse of power." *Durkee Lumber Co. v. Dep't of Conservation & Nat. Res.*, 903 A.2d 593, 597 (Pa. Cmwlth. 2006). A hearing is not required where the record contains sufficient unchallenged facts necessary for the Secretary to make the determination. *Id*. (citation omitted). Where a protestant fails to dispute the contents of the submissions to the Secretary and does not raise any questions of material fact, the Secretary is not required to hold a hearing. *Id*.

Here, as the Secretary properly noted, Sidelines fails to challenge or dispute any material facts. As the basis of its argument, Sidelines asserts that if "PennDOT is permitted to reject bids without a hearing on an ongoing basis as it has attempted to do here, it has in effect debarred Sidelines as a contractor without submitting that decision to the requirements of the debarment process as set forth in the [Procurement Code]." Sidelines' Br. at 14-15. We reject this argument. The law permits the Secretary to consider more than just the facts related to the RFQ at issue. The Secretary is to consider additional factors including "integrity, efficiency, industry, experience, [and] promptness[,]" see *Berryhill*, 491 A.2d at 952, which necessarily includes factors related to PennDOT's contractual history with Sidelines. Sidelines does not dispute the material facts relied upon by the Secretary. Therefore, the Secretary did not abuse her discretion in denying Sidelines' request for an evidentiary hearing.

12

Accordingly, we deny PennDOT's Motion and affirm the Secretary's June 15, 2021 final determination.


_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidelines Tree Service, LLC,               :
                              Petitioner   :
                                           :
              v.                           :    No.  716 C.D. 2021
                                           :
Department of Transportation,              :
                              Respondent   :


# **O R D E R**


**AND NOW**, this 15th day of December 2022, the Department of Transportation's Motion to Dismiss is **DENIED** and the June 15, 2021 final determination of the Secretary of Transportation for the Pennsylvania Department of Transportation is **AFFIRMED**.


_____
STACY WALLACE, Judge