J-A09034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| OMAR F. MARTINEZ | : | |
| | : | |
| Appellant | : | No. 383 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 22, 2021,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s): CP-36-CR-0002180-2020,
CP-36-CR-0002181-2020.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| OMAR F. MARTINEZ | : | |
| | : | |
| Appellant | : | No. 435 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 22, 2021,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s): CP-36-CR-0002181-2020.

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　**FILED: JUNE 20, 2023**

Omar F. Martinez appeals from the judgment of sentence imposing an aggregate of five to eleven years' incarceration after a jury convicted Martinez of sexually assaulting his fiancé's daughter ("A.S.") and his daughter ("T.M.") and of related offenses.[1] For the reasons below, we affirm.

---

[1] **See** 18 Pa.C.S.A. §§ 3125(a)(8), 3126(a)(8), 3127(a), 6301(a)(1), and 6318(a)(1).

During their childhood and teenage years, A.S. and T.M. resided with their mother and Martinez in a split-level home in Mount Joy, Pennsylvania. Although Martinez was not A.S.'s biological father, she viewed him as her father and referred to him as "dad."

In approximately 2009, when A.S. was twelve years old and T.M. was six, Martinez began molesting A.S. Initially, he would play pornography on the television in his "man cave" when A.S. came home from school and when she was cleaning the "man cave."

Martinez escalated their interaction during "tickle fights" in his bedroom with A.S and T.M. He wore only "pajama boxers" during these "tickle fights," and his "fly . . . would always just somehow miraculously come open." N.T., 7/12/21, at 77. Martinez grabbed A.S.'s hand and forced her to touch his exposed penis. *See id.* This occurred "[c]ountless times." *Id.* at 78.

Additionally, Martinez did not allow A.S. and T.M. to lock the bathroom door when showering. When A.S. was in the shower, Martinez would come into the bathroom, open the curtain, and watch her. He also sexually touched A.S. and forced her to touch his penis. *See id.* at 79.

After over a year of suffering Martinez's abuse, A.S. began to self-mutilate, including lacerating her arms and breaking her hand on the floor. This prompted Martinez to stop molesting A.S. in June of 2010, the summer before A.S. entered high school. Upon graduating in 2014, she quickly moved to New York City.

Around the time when A.S. moved out, T.M. was twelve and entered seventh grade. Martinez turned his predatory attentions to her.

He again began by playing pornography on the television on the "man cave" when she came home from school and required her to come downstairs to say hello to him and to kiss him. *See* N.T., 7/13/21, at 139-40. He would also change the television from regular programming to pornography whenever T.M. came into the "man cave" to clean it. Martinez also exposed himself to T.M., sexually touched her, and forced her to touch his penis. *See id.* at 141-43.

Martinez would also enter the bathroom when T.M. showered. He would watch her and tickle her. If she tried to cover herself, Martinez restrained her arms and used the shower head to spray water in T.M.'s face. *See id.* at 144.

To cope with Martinez's sexual abuse, T.M. journaled on the inside of her bedroom-closet door. Her writings included the following phrases and words: "Under the covers, in the dark;" "So frozen;" "Ignore;" "The Shower;" "Hurt;" "Anger;" "No self-esteem;" "Crybaby;" "Numb;" "What's wrong, idiot?" "The bedroom;" and "Just for her." *Id.* at 150-51.

T.M. repeatedly told her mother about the pornography but not about the sexual contact. She hoped that hiding the abuse would spare her mother's feelings. *See id.* at 151. Martinez did not stop showing T.M. pornography until, one day, she came home from school with a friend who also saw the pornography playing in the "man cave."

In 2018, the National Parks Service hired A.S. This new employment allowed her to travel throughout the western States to work at various parks. In the winter, she returned to Lancaster, Pennsylvania to share an apartment with friends.

That December, Martinez's parents threw him a birthday party at their home and invited members of the family, including A.S. Upon seeing Martinez for the first time in several months, she had a nervous breakdown and locked herself in an upstairs bathroom. T.M. went to comfort her, and A.S. explained that Martinez had molested her. T.M. told her sister that he also abused her. They agreed on a plan to disclose Martinez's conduct to the rest of the family, because "their kids could be in danger also." *Id.* at 156. The sisters did not want to involve the police.

In January 2019, T.M.'s mother found the writing on her bedroom-closet door; photographed it (*See* Commonwealth's Ex. 3.); and asked T.M., "Is this about your father?" N.T., 7/13/21, at 153. T.M. began to cry and said it was. Mother contacted A.S. for more details. She stated that Martinez had molested her, as well. Mother "kept asking if it was . . . maybe an accident." N.T., 7/12/21, at 88-89. The sisters told her their "pants don't accidentally come down . . . ." *Id.* at 89.

In response, mother kicked Martinez out of the house, but the expulsion only lasted a few weeks. When he returned, Martinez lived in the "man cave," but T.M. was no longer required to kiss him or to interact with her father. *See* N.T., 7/13/21, at 154.

In 2019, A.S. was working at a national park in the Pacific Northwest when she learned that her mother had permitted Martinez to return. A.S. began driving back to Pennsylvania to take T.M. to her home in Lancaster. During the return trip, another family member informed A.S. that her parents had called a family meeting without inviting the sisters.

That meeting, in early November of 2019, included the sisters' mother, grandmother, three aunts, an uncle, and Martinez. The mother and Martinez informed the family that they were not getting married, because A.S. and T.M. refused to attend. Martinez blamed A.S. He told the family that he had been "in bed naked and [twelve-year-old A.S.] had come into the room and touched him on his penis, but that he . . . didn't allow her to finish him to completion." *Id.* at 188.

He then admitted to watching pornography in the basement when the sisters arrived home from school. *See id.* Martinez also conceded "they would wrestle and play, and sometimes his penis would fall out of his boxers." *Id.* In addition, he confessed to opening "up the shower when [the sisters] were in there and tickl[ing] them or throw[ing] water on them, and that was just normal things that happened in their home." *Id.* at 188-89.

A few days later, on November 11, 2019, the sisters offered their version of events to the family through a detailed Facebook post by A.S. *See id.* at 200; *see also* Commonwealth's Ex. 2 & 5.

Upon reading the Facebook post, one of the sisters' cousins immediately took T.M. to live with her. A few days later, an aunt called the police, who

interviewed A.S., T.M., and other family members. They arrested Martinez and charged him with aggregated indecent assault, incident assault, corruption of minors, unlawful contact with minors, and indecent exposure. The case proceeded to a jury trial.

Of significance to this appeal, Martinez called Samuel Minnick and his wife, Samanatha, as defense witnesses. The Minnicks were sitting outside the courtroom during the prosecution's case-in-chief and saw a witness (one of the sisters' aunts) exit the courtroom. They heard the aunt speak with another Commonwealth witness (an uncle) before that witness entered the courtroom to testify. *See* N.T., 7/13/21, at 239. When Martinez's counsel asked if Mr. Minnick heard what the aunt had said to the uncle, the Commonwealth objected on the basis of hearsay.

Defense counsel argued, "Your Honor, it's an inconsistent statement. It also goes to one witness coaching another witness on what to say." *Id.* at 239-40.

The trial court replied, "Possibly. But it's sustained." *Id.* at 240.

A few minutes later, defense counsel tried to elicit the same testimony from Mrs. Minnick. *See id.* at 250. The trial court again sustained the Commonwealth's hearsay objection.

After Mrs. Minnick finished testifying, Martinez's attorney requested a sidebar. There, he informed the court as to how he believed the Minnicks would have testified – *i.e.*, the aunt told the uncle that defense counsel was

going to ask him if he smoked cannabis prior to the November 2019 family meeting, "and he should say no." *Id.* at 253.

Also relevant on appeal, Martinez attempted to attack A.S.'s credibility through the testimony of his brother, Fabian Martinez. Specifically, defense counsel asked Fabian, "Does [A.S.] have a reputation in the family?" *Id.* at 277.

Fabian answered, "She does have a reputation for lying, because there's many . . . ." *Id.* The Commonwealth interrupted him to object. The trial court sustained the objection without hearing arguments from the parties.

The jury convicted Martinez on all charges, and the trial court sentenced him as described above. This timely appeal followed.

Martinez raises two appellate issues, which we have reordered for ease of disposition:

> 1. Whether the trial court abused its discretion in refusing to permit trial counsel to impeach witnesses for the Commonwealth who engaged in *ex parte* discussions on questions to be asked during cross examination . . . ?
>
> 2. Whether the trial court committed reversible error in denying [Martinez] the ability to introduce character evidence of [A.S.'s] reputation for untruthfulness at trial?

Martinez's Brief at 9.[2]

_____

[2] We note that Martinez's first appellate issue focuses on the testimony of the Minnicks, who were **not** Commonwealth witnesses. They were defense witnesses. Also, in his Rule 1925(b) Statement, Martinez framed this issue
*(Footnote Continued Next Page)*

## 1.     The Hearsay Objections

First, we consider whether the trial court abused its discretion when it sustained the Commonwealth's hearsay objections to the testimony of Mr. and Mrs. Minnick.  According to defense counsel, the Minnicks intended to testify that they heard one Commonwealth witness (the sisters' aunt) say to another Commonwealth witness (an uncle) that defense counsel "was going to ask [uncle] if he had smoked [cannabis,] and he should say no."  N.T., 7/13/21, at 253.  The trial court barred this proffered testimony on the grounds that it was inadmissible hearsay.

On appeal, Martinez advances four arguments as to why he believes the trial court's decision to sustain the Commonwealth's objection was an abuse of discretion.  First, he claims the aunt's out-of-court statement does not meet the definition of hearsay, because Martinez did not seek to admit the aunt's statement for the truth of the matter asserted.  **See** Martinez's Brief at 46-49.  Second, Martinez asserts that, even if the aunt's statement was hearsay,

---

by claiming the trial court refused to let him "cross-examine" Commonwealth witnesses, rather than "impeach" them.  Thus, the issue that he raises on appeal does not match the issue raised in his Concise Statement of Errors or the argument that he makes subsequently in his brief.  This violates P.R.A.P. 1925, a basis for waiver.  His actual appellate argument focuses upon the Commonwealth's objection to the testimony of his defense witnesses.

Under P.R.A.P. 2116(a), "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Failure to comply with Rule 2116(a) results in wavier of the issue actually argued.  Thus, it appears that Martinez has waived his first appellate issue on two grounds.  However, as we can readily discern the issue he intended to raise, we will address the merits of his argument.

it falls within the present-sense-impression exception. *See id.* at 49-51. Third, Martinez suggests that the aunt's statement falls under the prior-inconsistent-statement rule to impeach a witness. *See id.* at 51-52. Fourth, he argues the aunt committed a criminal offense by obstructing the uncle's testimony, in violation of 18 Pa.C.S.A. § 4958. *See id.* at 53-55.

We dispose of each argument in turn.

Initially, we observe that the "issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020).

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

At trial, when the Commonwealth objected to the Minnicks' testimony, Martinez's counsel made two arguments in rebuttal. He said, "Your Honor, it's an inconsistent statement. It also goes to one witness coaching another witness on what to say." N.T., 7/13/21, at 239-40.

Defense counsel did not argue that the aunt's out-of-court statement failed to meet the definition of hearsay, as Martinez now claims for the first time on appeal. Thus, by not advancing this theory below, defense counsel effectively conceded the aunt's statement was hearsay. As such, we dismiss Martinez's first argument as waived, because he did not raise it at trial. *See* Pa.R.A.P. 302(a).

Additionally, Martinez's counsel did not argue the aunt's out-of-court statement fell within the present-sense-impression exception to the hearsay-exclusionary rule, as Martinez now argues on appeal. Hence, we dismiss his second argument as waived. ***See id.***

Turning to his third argument, Martinez believes the aunt's out-of-court statement was admissible as a prior, inconsistent statement.

"Our standard of review for evidentiary rulings, including the admission of hearsay, is abuse of discretion." ***Commonwealth v. Luster***, 234 A.3d 836, 838 (Pa. Super. 2020). Abuse of discretion "is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law; exercised its judgment for reasons of partiality, prejudice, bias or ill will; or arrived at a manifestly unreasonable decision." ***Commonwealth v. Kitchen***, 162 A.3d 1140, 1146 (Pa. Super. 2017).

Martinez asserts that the trial court abused its discretion by misapplying the Pennsylvania Rule of Evidence 613. We disagree.

As the name "prior-inconsistent-statement rule" implies, it requires the out-of-court statement be made ***before*** the witness testifies. "A witness may be examined concerning a ***prior*** inconsistent statement made ***by the witness*** to impeach the witness's credibility." Pennsylvania Rule of Evidence 613(a) (emphasis added).

Here, Marteniz's assertion that the aunt's out-of-court statement to the uncle constitutes a prior inconsistent statement is chronologically wrong. Her

alleged statement to uncle occurred **after** she testified. Hence, the statement is not a prior statement. Accordingly, it does not fall within the scope of Rule of Evidence 613.

Furthermore, Rule 613 does not apply to uncle's testimony. Defense counsel's proffer did not assert that uncle said something in the hallway. Instead, he proffered that the Minnicks would have testified as to what **the aunt** said to uncle. Thus, Martinez's reliance upon Rule 613 is misplaced to impeach the uncle, because the uncle did not make the statement at issue.

For Martinez's fourth and final argument regarding the aunt's out-of-court statement, he suggests the statement was criminal under 18 Pa.C.S.A. § 4958. This statute is irrelevant.[3] Even if the aunt violated Section 4958,

---

[3] The statute dictates as follows:

> **(a) Intimidation.--**A person commits an offense if:
>
> (1) The person has knowledge or intends that the person's conduct under paragraph (2) will obstruct, impede, impair, prevent, or interfere with the . . . prosecuting a child abuse case.
>
> (2) The person intimidates or attempts to intimidate any reporter, victim, or witness to engage in any of the following actions:
>
>> (i)    Refrain from making a report of suspected child abuse or not cause a report of suspected child abuse to be made.
>>
>> (ii)    Refrain from providing or withholding information, documentation, testimony or evidence to any

*(Footnote Continued Next Page)*

Martienz does not explain, much less establish, how her crime constituted an abuse of discretion by the trial court. If aunt alerted uncle to the coming testimony and if she told him how to testify, her statement might well be admissible in a prosecution against her. *See* Pa.R.E. 803(25) (exempting out-of-court statement by party opponent from the hearsay-exclusionary rule). But Martinez's sites to no hearsay exception that would render the aunt's out-of-court statements admissible at his trial.

Accordingly, he does not persuade us that the trial court committed an abuse of discretion by prohibiting the Minnicks' from testifying to aunt's out-of-court statement. This appellate issue affords Martinez no relief.

## 2.    A.S.'s Reputation in the Family

In his last appellate issue, Martinez asserts that the trial court abused its discretion by sustaining the Commonwealth's objection when defense

person regarding a child abuse investigation or proceeding.

(iii)   Give false or misleading information, documentation, testimony or evidence to any person regarding a child abuse investigation or proceeding.

(iv)   Elude, evade or ignore any request or legal process summoning the reporter, victim or witness to appear to testify or supply evidence regarding a child abuse investigation or proceeding.

(v)    Fail to appear at or participate in a child abuse proceeding or meeting involving a child abuse investigation to which the reporter, victim or witness has been legally summoned.

18 Pa.C.S.A. § 4958.

counsel asked Fabain Martinez, "Does [A.S.] have a reputation in the family?" N.T., 7/13/21, at 277. Martinez argues A.S.'s reputation within the family is admissible to attack her credibility by showing a "reputation for having a character for . . . untruthfulness." Pa.R.E. 608(a). **See** Martinez's Brief at 23-43.

Whether an issue is moot raises a "pure questions of law, and therefore this Court's standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Dixon**, 907 A.2d 468, 472 (Pa. 2006).

"It is well established . . . that [Pennsylvania courts] will not decide moot questions." **In re Gross**, 382 A.2d 116, 119 (Pa. 1978). An issue becomes moot "as a result of an intervening change in the facts of the case." **Id.**

Before the Commonwealth could object to defense counsel's question regarding A.S.'s familial reputation, Fabian answered the question. He said A.S. "does have a reputation for lying . . . ." N.T., 7/13/21, at 277. Even though the trial court sustained the objection, the Commonwealth did not move to strike Fabian's testimony that A.S. had a reputation for lying within the family. Also, the trial court did not instruct the jury to disregard his testimony.

Thus, there was an immediate, intervening change in the facts of the case that rendered the question of whether the trial court abused its discretion by sustaining the Commonwealth's objection moot. Namely, (1) Fabain told the jury that A.S. had a reputation within the family for untruthfulness, and (2) the jury was unrestrained to consider that evidence. Therefore, the

impeaching testimony that Marinez sought to introduce was actually introduced, notwithstanding the Commonwealth's successful objection. As a result, this issue is moot.

Admittedly, the objection stopped Fabian from telling the jury specific examples of A.S.'s untruthfulness. *See* N.T., 7/13/21, at 277. However, Fabian could not provide such details. "[T]he character of a witness for truthfulness may **not** be attacked . . . by . . . specific instances of the witness's conduct." Pa.R.E. 608(b)(1) (emphasis added).

The Rule explicitly bars a witness from providing specific examples of untruthfulness to prevent a trial within the trial on witness credibility, unless the examples are criminal convictions. ***See id.*** Martinez makes no claim that A.S. had convictions for *cimen falsi*. Therefore, Martinez suffered no prejudice from the Commonwealth's successful objection, and the trial court's failure to instruct the jury to disregard Fabian's testimony rendered this issue moot.

Martinez's second appellate issue is dismissed as moot.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/20/2023

- 14 -